The E.E. MAXWELL COMPANY,
INC., Plaintiff,

v.

ARTI DECOR, LTD., Defendant.

Civ. A. No. CA3–86–1414–D.

United States District Court,
N.D. Texas,
Dallas Division.

June 13, 1986.

Charles M. Hamilton, of Bob J. Rogers,
P.C., Dallas, Tex., for plaintiff.

John Feather, of Feather & Sumner, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

In this diversity action removed from state court, defendant, Arti Decor, Ltd. ("Decor"), has applied for a preliminary order to compel the return of certain bathroom hardware held by its former manufacturer's representative, The E.E. Maxwell Company, Inc. ("Maxwell"), plaintiff. Maxwell has applied for a prejudgment writ of attachment and for a temporary restraining order so that it may retain possession of the subject goods. For the reasons [1] set forth, the court grants in part Maxwell's application for a prejudgment writ of attachment, to the extent of $69,-000, denies its application for temporary relief, and denies Decor's application for preliminary order. A bond, conditioned as required by Texas law, shall be posted by Maxwell in the amount of $69,000.

## I.

### A. Procedural History

Maxwell filed a sworn petition in Texas state court on April 23, 1986 alleging that Decor was liable for breaching various agreements entered into between Maxwell and Decor and for tortious interference with business relations, fraud and misrepresentation, and deceptive trade practices. Maxwell pleaded for actual damages, multiple damages pursuant to the Texas Deceptive Trade Practices—Consumer Protection Act, TEX. BUS. & COMM.CODE § 17.50 et seq. (Vernon Supp.1986) ("DTPA"), unspecified punitive damages, attorney's fees, interest, and costs. On May 27, 1986, Decor removed this case to this court. Thereafter, on June 2, 1986, Decor filed its answer and a counterclaim. In the counterclaim Decor contends Maxwell is liable for

"inventory discrepancies and other breaches of contract" and that Decor is entitled to immediate relief from and damages for Maxwell's retention of its inventory of Decor's goods. In its "application for preliminary order," filed June 3, 1986, Decor seeks an order requiring Maxwell to deliver the bathroom fixtures to Decor.

On June 5, 1986, the court conducted a telephone conference with counsel for both parties. At that time, Maxwell indicated it would seek to keep possession of the fixtures by means of a prejudgment writ of attachment. The court decided to award limited preliminary relief to Decor in the form of a right to inspect the chattels until Maxwell could file its application and supporting affidavits and Decor could file its opposition and opposing affidavits. On June 9, 1986, Maxwell filed its sworn application for writ of attachment and injunctive relief and motion to deny defendant's requested injunctive relief, together with a supporting affidavit and exhibits. On June 10, 1986, Decor filed its reply in support of application for written order together with a sworn "verification."

### B. Background Facts and Contentions

Decor is a distributor of bathroom fixtures such as brass faucet sets, brass accessories, towel bars, tissue holders, and vitreous china tub and shower sets and sink basins. In 1985, Decor and Maxwell entered into two written contracts: a manufacturer's representative agreement and a warehousing and sales agreement. In terms, the representative agreement provided that Maxwell was to represent Decor in the states of Texas (except El Paso), Oklahoma, Arkansas, and Louisiana. Maxwell was to sell Decor's products in exchange for a sales commission.[2] The warehouse agreement provided that Maxwell receive a fee in exchange for warehousing and distributing Decor merchandise on a consignment basis. In January 1986, the

---

1. This memorandum opinion constitutes the court's findings of fact and conclusions of law. See Fed.R.Civ.P. 52(a).

2. This agreement differed from the typical Decor agreement in which the distributor purchased goods from Decor for resale.

parties entered into a supplemental written memorandum whereby Maxwell was to receive a monthly fee for its invoicing and quality control costs.

Beginning in February 1986, the parties' relationship began to deteriorate. According to Maxwell, Decor represented that a shipment of fixtures would be delivered to Maxwell for Maxwell's use in filling existing backlog orders from its customers, for increasing Maxwell's distribution capacity to potential customers, and for satisfying an unfilled demand in Maxwell's territory for such fixtures. Maxwell alleges that Decor diverted the goods elsewhere. Maxwell also contends that Decor has failed to pay the monthly fee for invoicing and quality control services. Maxwell further complains that Decor has failed to supply the promised volume of merchandise to fully service and expand Maxwell's territory, has failed to fully and timely account for commissions due on prior sales, has prevented Maxwell from fulfilling its contracts with its customers and with Decor, and has refused to pay the monthly invoicing and quality control fee. Maxwell also alleges that Decor misrepresented and defrauded it regarding the expectations and relationships between them and that Maxwell undertook certain actions in reliance on the misrepresentations. Maxwell contends Decor's actions have tortiously interfered with Maxwell's relations with its customers and with prospective customers of both Maxwell's product and the Maxwell business entity itself. Maxwell also contends it was to be the exclusive Decor representative in the four-state area and the exclusive warehouseman and that, contrary to Decor's representations, it has not been.

Decor admits that some commission payments that Maxwell is entitled to receive were unavoidably late and that some funds have been held due to inventory discrepancies in Maxwell's warehouse. Decor denies, however, the material elements of Maxwell's allegations. By way of counterclaim, Decor alleges the agreements with Maxwell were properly terminated pursuant to 30–day written notice and that such agreements were terminated, at the latest, on June 1, 1986. Decor contends that the bathroom fixtures now held on consignment by Maxwell in its warehouse are the property of Decor to be returned to Decor or shipped to customers. Decor alleges that it will suffer damages in an unspecified amount for lost profits, injury to present and future customer relationships, harm to its reputation, and loss of business good will if the warehoused fixtures are not released by Maxwell.

## II.

The present dispute centers upon who is entitled to possession of the bathroom fixtures now warehoused by Maxwell. It is undisputed that the goods are owned by Decor. Maxwell alleges no basis for claiming it presently owns the fixtures, in whole or in part, and as Decor aptly notes in its reply and supplemental brief, "Even the Application for Writ of Attachment must by its nature admit that the goods belong to [Decor]. Otherwise, why seek an attachment?" (Decor Reply at 8). This being so, if Maxwell cannot demonstrate a right to the fixtures by way of writ of attachment or temporary restraining order, Decor is entitled to take possession of its goods. For this reason, the court determined on June 5 to consider Maxwell's application for relief simultaneously with Decor's application, pursuant to the affidavit procedure authorized by Fed. R. Civ. P. 43(e).[3]

### A. Prejudgment Attachment

Texas law governs the question whether Maxwell is entitled to the writ. Pursuant to Fed.R.Civ.P. 64, the law of the forum

---

3. Maxwell requests that the court conduct a hearing concerning the parties' requests for injunctive relief in order that the court may make a proper determination of the parties' rights. Fed.R.Civ.P. 43(e), of course, contemplates that the district court may rule on an application for injunctive relief without seeing witnesses or hearing testimony and instead decide the matter on affidavits. See Miller Brewing Co. v. Fort Worth Distributing Co., Inc., 781 F.2d 494, 496 (5th Cir.1986).

state is to be applied where, as here, there is no applicable federal statute. To obtain such a writ, a plaintiff must file with the court an affidavit which specifies the general grounds for its issuance, the amount of the demand and the specific grounds for its issuance. TEX.CIV.PRAC. & REM. CODE ANN. § 61.022 (Vernon 1986). The general grounds for issuance of a writ of attachment are set forth in TEX.CIV. PRAC. & REM.CODE ANN. § 61.001 (Vernon 1986), which provides that a writ is available to a plaintiff if: (1) the defendant is justly indebted to the plaintiff; (2) the attachment is not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ is issued; and (4) one or more of the specific grounds listed in § 61.002 exist. The grounds for issuance set forth in § 61.002 are:

(1) the defendant is not a resident of this state or is a foreign corporation or is acting as such;

(2) the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff;

(3) the defendant is in hiding so that ordinary process of law cannot be served on him;

(4) the defendant has hidden or is about to hide his property for the purpose of defrauding his creditors;

(5) the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts;

(6) the defendant is about to remove all or part of his property from the county in which the suit is brought with the intent to defraud his creditors;

(7) the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors;

(8) the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors; or

(9) the defendant owes the plaintiff for property obtained by the defendant under false pretenses.

TEX.CIV.PRAC. & REM.CODE ANN. § 61.002 (Vernon 1986).

■ Prejudgment attachment is a statutory remedy whose validity does not depend on the truthfulness of the allegations of the affidavit or the petition but on compliance with the statute in making the affidavit. *21 Turtle Creek Sq. Ltd. v. New York State Teachers' Ret. Sys.*, 425 F.2d 1366, 1369 (5th Cir.1970). Thus, the court looks to Maxwell's application and affidavit to see if the required pleading has been made. The Texas scheme appears to be one of "strict entitlement;" that is, if the proper allegations are made, the writ shall issue.

■ In his affidavit in support of the application, E.E. Maxwell, Maxwell's president, states that Decor "is justly indebted" to Maxwell, that Maxwell does not seek the writ of attachment "for purpose of injuring or harrasing [sic]" Decor and that Decor "will probably lose its debt" unless the writ is issued. Maxwell also asserts that:

I have it on information and belief that the Defendant is insolvent or imminently insolvent and will be unable to pay any judgment rendered against it in favor of the Plaintiff. Further, the Defendant is not a resident of this state and is a foreign corporation or is acting as such, being a California corporation. I have it on information and belief that the Defendant is about to remove its property from this state without leaving an amount sufficient to pay its debts and the Defendant is about to convert all or part of its property into money for the purpose of placing it beyond the reach of its creditors such as the Plaintiff.

(Affidavit of Maxwell at II). Although the affidavit does not specify the amount of the demand, it does state that all allegations made in Maxwell's original petition, its application for writ of attachment, and its brief in support are reasserted in the affidavit. In the application Maxwell does make a demand for damages, including liq-

uidated damages. *See by analogy Morrow v. Johnson,* 15 Tex. 568 (1885) (affidavit may refer to the petition for the amount of the indebtedness). The court concludes that Maxwell's application satisfies the statutory requirements.

Decor challenges Maxwell's application for the writ on the ground that Maxwell's claim against Decor is, in large part, unliquidated. Maxwell responds that TEX.CIV. PRAC. & REM.CODE § 61.005 (Vernon 1986) permits the granting of a writ in the case of an unliquidated claim such as the present one. Section 61.005 states:

> Nothing in this chapter prevents issuance of a writ of attachment in a suit founded in tort or on an unliquidated demand against an individual, partnership, association, or corporation on whom personal service cannot be obtained in this state.

■ The writ of attachment in Texas is purely of statutory origin, having had no existence as a common-law remedy. *Gulf Oil Co. v. First National Bank of Hereford,* 503 S.W.2d 300, 304 (Tex.Civ.App.—Amarillo 1973, no writ). The purpose of attachment is to enable a plaintiff to secure his *debt* by a seizure of the defendant's property before judgment, *id.,* thus, the requirement of § 61.001 that the defendant be "justly indebted" to plaintiff. The term "debt" has been defined as an obligation to pay a liquidated sum on an express or implied contract. *El Paso Nat'l Bank v. Fuchs,* 89 Tex. 197, 34 S.W. 206, 207 (1896). When the damages are unliquidated, however, and the cause of action is such that there is no definite means of their ascertainment, the general rule is that an attachment may not lawfully issue. *Hochstadder v. Sam,* 73 Tex. 315, 11 S.W. 408 (1889). Thus, the Fifth Circuit has recognized that the longstanding rule in Texas is that a writ of attachment will not issue in a suit for unliquidated damages. *21 Turtle Creek Square, Ltd.,* 425 F.2d at 1368.

■ The Texas legislature created a statutory exception to the general rule when it enacted Articles 247a and 281, the precursors of § 61.005. The predecessors of § 61.005 were enacted prior to the enactment of the Texas long-arm statute apparently as a means of obtaining *in rem* jurisdiction over a non-resident's assets located in Texas if *in personam* jurisdiction was unavailable. *See* 17 Tex.Jur.3d Creditors' Rights and Remedies § 123 (1982). Still today, as authorized by § 61.005, when personal service cannot be obtained on the defendant in the state, the demand need not be liquidated.

Section 61.005, however, is of no assistance to Maxwell in the instant case. By Maxwell's own admission, personal service could have been obtained upon Decor in this state. In its state court petition, Maxwell alleged two bases for obtaining personal service pursuant to TEX.CIV.PRAC. & REM.CODE § 17.043 (Vernon 1986): first, upon its alleged agent, McEwen and Bennett, Inc., a person alleged to be in charge of some of Decor's business in this state; and second, upon Maxwell itself, as a person in charge of some of Decor's business in Texas. *See* Original Petition at 3, ¶¶ I(5)(b) and (c) and I(6)(b) and (c). (*Cf.* § 17.044 which, unlike § 17.043, is characterized as *substituted* service on the secretary of state.)

Having determined that the writ is available only for the liquidated portion of Maxwell's claim, the court assays the demand to determine the portion to which attachment is applicable. Maxwell claims in its application that at least $69,000 is liquidated. The court is to take this allegation as true. *See 21 Turtle Creek Square, Ltd.,* 425 F.2d at 1369. Accordingly, the writ of attachment shall issue for that amount upon the posting of a bond in the amount specified at section IV, *infra,* conditioned as required by § 61.023(a)(4).

### B. Temporary Restraining Order

■ The court construes Maxwell's application for "temporary injunction" as an application for temporary restraining order and denies the application. One of the elements for obtaining a preliminary injunction and, in turn, a temporary restraining order, is that plaintiff has a substantial

likelihood of success on the merits of its claim. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985). The claims presented here are hotly disputed and are not such that the court can say plaintiff has a substantial likelihood of success. Moreover, Maxwell's affidavit statement, on information and belief only, that Decor cannot respond in damages, while statutorily satisfactory for attachment purposes, will not support issuance of a temporary restraining order because it is insufficient to demonstrate that Maxwell has an inadequate remedy at law. *See Dreyer v. Jalet*, 349 F.Supp. 452, 467 (S.D.Tex.1972), *aff'd*, 479 F.2d 1044 (5th Cir.1973) (no injunctive relief where recovery of damages is adequate remedy), and *Marshall Durbin Farms, Inc. v. National Farmers Org. Inc.*, 446 F.2d 353, 357 (5th Cir.1971) (courts reluctant to issue injunction where moving party substantiates allegations on information and belief).

### III.

■ Having concluded that the bathroom fixtures in question are owned by Decor, and having determined that Maxwell has shown itself entitled to a prejudgment writ of attachment in the amount of $69,000, but not a temporary restraining order, the court holds that Maxwell may no longer retain possession of any of the fixtures that exceed $69,000 in retail value. The court need not, however, issue a "preliminary order" in favor of Decor, mandatory in terms, requiring Maxwell to turn over the balance of the fixtures. The court assumes that Maxwell will voluntarily release those fixtures that exceed the fixtures to which the writ of attachment applies in light of the court's decision declaring its withholding of the excess fixtures to be without legal basis. Preliminary relief, prohibitory in nature, will issue only if Maxwell interferes with Decor's efforts to remove the excess fixtures from the warehouse. Such efforts may begin during normal working hours on or after June 17, 1986 at 9:00 a.m.

### IV.

The court sets the prejudgment attachment bond at $69,000. The standard for determining the amount of the bond is that which will pay all damages and costs adjudged against Maxwell for wrongful attachment. Here, Decor is to be deprived of $69,000 of its property. To fill customer orders it will have to obtain substitute goods in that amount. Although the court recognizes that Decor can presumably obtain these goods at a lesser wholesale price, any difference in the higher bond will serve to secure other possible losses to Decor such as lost business and lost customer good will in delaying service to Decor's customers while an alternate supply is obtained.

The application for prejudgment writ of attachment is granted in part and denied in part. The applications for temporary restraining order and preliminary order are denied. Decor's right of inspection is extended to June 17, 1986 at 9:00 a.m. The attachment bond shall be posted by that time.

SO ORDERED.