**HOME INV. CO. et al. v. FIDELITY PETROLEUM CO. (No. 8768.)***

(Court of Civil Appeals of Texas. Dallas. March 10, 1923. Rehearing Denied March 31, 1923.)

**1. Corporations ⚫29(2)—Validity of foreign corporate organization cannot be attacked by plea in abatement.**

The regularity, good faith, and validity of the corporate organization of a foreign corporation cannot be questioned by a plea of nul tiel in injunction proceedings by such corporation to protect its duly abstracted judgment lien on real estate.

**2. Vendor and purchaser ⚫254(1)—No equitable lien created where holder of vendor's lien notes fails to record renewal agreement.**

Where the owner and holder of notes secured by vendor's lien failed to have recorded a written renewal and extension of time of payment, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5694, 5695, she could not claim an equitable lien merely because she had relied upon the parol agreement of the obligor, her son-in-law, with whom she lived, to execute and have recorded the necessary written renewal.

**3. Liens ⚫7—Equitable lien not created by parol.**

An equitable lien on land cannot be created by parol.

**4. Frauds, statute of ⚫56(4)—Parol agreement to renew vendor's lien contrary to statute of conveyances and of frauds.**

A parol agreement to make a legal and binding renewal of vendor's lien notes is contrary to the statute of conveyances and to the statute of frauds.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by the Fidelity Petroleum Company against the Home Investment Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

J. W. Gormley and Thomas, Frank, Milam & Touchstone, all of Dallas, for appellants.

J. A. Templeton, of Fort Worth, for appellee.

HAMILTON, J. The salient facts of this case may be stated as follows:

In 1916 Dr. P. L. Campbell executed to Home Investment Company certain notes which were secured by deeds of trust upon different tracts of land. At the time these notes and deeds of trust were made Mrs. W. T. Fakes owned a $3,500 note dated February 28, 1912, which had been indorsed to her by F. M. Donnelly, and which was secured by a vendor's lien on one of the tracts of land which the deed of trust to Home Investment Company covered; the note having been executed by Campbell in part payment of the purchase money of the property, and by Donnelly and wife sold to Mrs. Fakes. Mrs. Fakes was Campbell's mother-in-law, and she made her home with him. One day before the statutory period of limitation had run both against the note and the lien, Dr. Campbell requested an extension for a period of four years. A written renewal and extension was expressed on the note, and was signed by Campbell. At the time he called Mrs. Fakes' attention to the fact that an extension of the vendor's lien would have to be executed in writing, and the written instrument evidencing the extension placed of record. The preparation of this instrument was left to him by Mrs. Fakes, he promising to have it prepared and put of record. This he did not do. Mrs. Fakes had lived with Dr. Campbell ever since his marriage to her daughter, and was living with him, as above stated, at the time she purchased the vendor's lien note, as well as at the time the parol extension agreement was made. She testified that she never had any other agreement with Campbell concerning the matter, and that she kept the note with her papers.

In 1920 appellee obtained a judgment against Campbell, and duly abstracted it. By virtue of this appellee claimed a statutory judgment lien against the property upon which the vendor's lien had existed to se-

---

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error in Appeal of Fakes refused April 25, 1923.

cure the payment of the note held by Mrs. Fakes. Prior to that time the trustee named in the deeds of trust made to appellant Home Investment Company had died, and appellant O. O. Touchstone was named as substitute trustee, in conformity with the provisions of the deeds of trust, to advertise and sell under the deed of trust the tract of land upon which the vendor's lien had existed to secure payment of the note held by Mrs. Fakes. Appellee sought and obtained an injunction to prevent the sale of the property. By allegations of the petition filed in this cause, appellee sought to compel the appellant Home Investment Company to establish the exact amount of the indebtedness upon the property which its deed of trust secured, and alleged that the vendor's lien to secure the note held by Mrs. Fakes constituted a cloud upon the title to the property, and prayed that it be canceled. The order granting the injunction was dissolved, and the cause dismissed as to Home Investment Company and Mrs. Fakes upon their motion. Thereafter, upon the amended petition and the motion of appellee, the order dissolving the injunction was set aside, and the cause reinstated for trial.

A jury trial was had, and the cause submitted upon special issues. The issues submitted having been answered by the jury by verdict duly returned, judgment was entered in appellees' favor. The appeal rests upon two clear, outstanding, and determinative propositions.

[1] The first is that the court erred in overruling appellant's plea of nul tiel as to the incorporation of appellee. The allegation was that appellee was not a valid corporation, but was a tramp corporation, attempted to be organized in the state of Delaware; that it was organized without any intention on the part of its organizers that it should transact its business in Delaware; that it had done no business in that state since it was organized; that its capital stock was not subscribed in good faith, and that the Delaware incorporators sold their interest in the corporation to a citizen of Oklahoma within three days after the incorporation.

We are of the opinion that the action of the court in overruling the plea in abatement was proper. A charter, as appears from the plea itself, had been issued to appellee in compliance with statutory requirements of the state of Delaware. Thereafter the corporation, as also appears from the allegations, had obtained a permit to do business in the state of Oklahoma. The mark of approval had been duly put upon its corporate status as being legal and valid, and we do not think the question of the regularity or validity of the corporate steps upon which its being was made to rest is within the province of permissible inquiry and adjudication by a court of this state as a preliminary to determining the judicial rights claimed under its petition in the case. In such circumstances courts will not look beyond the recognized status reflected by the certificate of the charter and undertake to litigate the question of whether or not acts of bad faith tainted the proceedings and attended the steps preliminary to the creation of the corporation. It came into the courts of this state stamped with every mark of legitimacy and recognition by the state which gave it corporate life. The official acts by which it was brought into existence admittedly being those strictly followed and complied with in forming a good faith de jure corporation under the laws of the state of its parentage, its existence could not be assailed in this proceeding.

[2] The second principal proposition presented is in effect that the facts reveal an equitable lien upon the land existing in favor of Mrs. Fakes as contended in her behalf, which was superior to the statutory judgment lien asserted by appellee, and which could not be rendered secondary to a mere statutory judgment lien, regardless of whether the lienholder had any character of notice of such asserted equitable lien. This view we cannot accept. In the first place, we do not perceive any basis in the transaction between Mrs. Fakes and Dr. Campbell for the assertion of an equitable lien. Under Mrs. Fakes' own evidence no fiduciary relation existed between her and Campbell, and there is no other evidence tending to show such relation. No trust relation arose from Campbell's mere parol agreement to execute a written renewal and have it recorded in compliance with the mandatory requirements of the statutes providing for the extension of vendors' liens. There is no evidence in the record tending to show that he was guilty of fraud, deliberate misrepresentation, or other act of turpitude in his omission to execute the renewal and have it recorded. Mrs. Fakes merely trusted him to make a legal and binding renewal of the lien according to the parol agreement he had made to that effect with her, and he neglected to carry out the undertaking. An equitable lien in such circumstances will not be created to take the place of a legal lien thus lost.

[3] As we understand it, the general doctrine is that an equitable lien cannot be created against real estate by a mere verbal agreement, but that only an express written executory contract which sufficiently indicates an intention to render a particular tract of land security for a debt, or in which a party agrees to convey or transfer land as such security, creates an equitable lien upon the particular land which may be enforced against it. Pomeroy's Equity Jurisprudence, § 1235 et seq. Of course this doc-

trine is not to be confused with the holdings of our courts of equity in declaring an express trust to arise from such transactions as those wherein two or more persons together purchase a tract of land, and the legal title is taken only in the name of one, or with any other rule of the general equity doctrine of trusts arising by operation of law.

Articles 5694 and 5695 are mandatory and exclusive in providing the means of asserting and extending vendor's liens given to secure purchase-money notes. Article 5694 provides that, if suit is not brought within four years from maturity of the indebtedness for the recovery of the real estate or for the foreclosure of the lien which exists against it to secure purchase-money notes, then, in such event, the purchase money shall be conclusively presumed to have been paid "in any suit to recover such land or to enforce a lien thereon." Article 5695 provides an exclusive method of extending such lien and giving notice of its extension. The public policy of the state in such matters is thus expressed, and equity will not grant such remedy or process as here sought when to do so would tend to contravene the public policy of the state expressed through its statutes. Story's Equity, par. 1599.

[4] Considering the contention apart from and independent of the above-cited statutes, we think it ought to be resolved against appellant in the light of the statute of conveyances and the statute of frauds and perforce of decisions in this state rendered prior to the enactment of articles 5694 and 5695. It has long been the settled law in Texas that a lien will not be created upon real estate by parol agreement. Allen v. Allen, 101 Tex. 363, 107 S. W. 528; Frank Clothing Co. v. Deegan (Tex. Civ. App.) 204 S. W. 471; Poarch v. Duncan, 41 Tex. Civ. App. 275, 91 S. W. 1110; Alfalfa Lumber Co. v. Mudgett (Tex. Civ. App.) 199 S. W. 340.

The judgment is affirmed.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes