**21 TURTLE CREEK SQUARE, LTD.,**
Plaintiff-Appellant,

v.

**NEW YORK STATE TEACHERS' RETIREMENT SYSTEM, Defendant-Appellee.**

**No. 27640.**

United States Court of Appeals,
Fifth Circuit.

May 11, 1970.

David M. Thornton, Gerald G. Stamper, Tulsa, Okl., Lancaster Smith, Dallas, Tex., for plaintiff-appellant.

Henry W. Simon, Fort Worth, Tex., for defendant-appellee.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

21 Turtle Creek Square, Ltd., (21), plaintiff below and appellant herein, is a Texas limited partnership. This entity was formed for the purpose of owning, developing and operating a high rise apartment complex in Dallas, Texas. Appellee, New York State Teachers' Retirement System (Teachers), is a body corporate organized and existing under the Education Laws of New York.

In order to finance construction, 21 obtained a loan from Teachers in 1962 in the amount of $9,910,900.00, said loan being insured by the Federal Housing Administration under the National Housing Act and secured by two deeds of trust and real estate mortgages covering the property. The interim construction loan disburser (Disburser) was the National Commercial Bank and Trust Company of Albany, N. Y. Disburser owned 10% of the construction loan and Teachers owned 90%, pursuant to a participation agreement. Various complications delayed the final closing of the loan, which was finally culminated in November of 1964.

The cause of action asserted by the plaintiff-appellant in this case arises from conversations which 21 contends occurred shortly before the final closing of the loan. It is alleged that the FHA was concerned that if they permitted 21 to close the loan, 21 might immediately thereafter walk away from the project without any liability for payment of the note and mortgage. The Director of Rental Housing for the FHA informed Thornton, the attorney representing 21, that there was a regulation which permitted the mortgagor to obtain an increase in mortgage amount for operating losses which it might incur during the first two years of operation. 21 claims that in order to induce it to remain in operation of the project, an oral promise was made by the attorneys representing the Disburser and Teachers, upon which 21 had a right to rely and did rely and which Teachers is estopped to deny, that Teachers would increase the amount of the loan secured by the mortgage so that 21 would be repaid all operating losses incurred by it for the two-year period.

In March of 1967, Teachers refused to close the increased loan allegedly because

of certain title defects. In July of 1967, Teachers instituted foreclosure proceedings where it made the highest bids, thus resulting in the sale of the property to Teachers.

21 commenced this action in the state District Court of Dallas County on August 1, 1967, obtaining jurisdiction over Teachers by a writ of attachment of the real property of the apartment project. Teachers filed a petition for removal to the Federal District Court and attacked the writ of attachment. The District Court sustained the motion to quash the writ. Thereafter, 21 procured service upon Teachers through service upon the Texas Secretary of State under the long-arm statute. The District Court overruled Teachers' motion to dismiss for lack of jurisdiction, but granted its motion for summary judgment. It was ordered that 21's complaint be dismissed, that plaintiff take nothing against defendant and that a partial summary judgment be granted defendant on its counterclaim.

The issues presented on appeal are: (1) Did the trial court err in refusing to dismiss this action for lack of jurisdiction; (2) Did the trial court properly quash the writ of attachment issued by the state District Court; and (3) Did the trial court err in granting summary judgment in favor of defendant-appellee.

I

## JURISDICTION

■ After the district court quashed the writ of attachment, 21 was permitted to, and did, procure service upon Teachers as related above. We hold that the district court had in personam jurisdiction over the defendant-appellee, Teachers, under the provisions of Art. 2031b, Revised Civil Statutes of Texas (long-arm statute). Although the contract was executed in New York, Teachers' performance by advancing money for the development of specific property in Texas, looking to its operations for payment, followed by foreclosure, was "doing of

business" under the holding in Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69 (5th Cir. 1961).

II

## WRIT OF ATTACHMENT

Plaintiff in its original petition alleged that it had a legally enforceable contract with defendant, which the defendant had refused to perform, and that it suffered damages in the amount of $3,000,123 because the defendant "does now wilfully, wrongfully and fraudulently continue to refuse to perform its obligations under said contract and make the said additional loan of $1,525,800.00." It prayed for exemplary damages in the additional amount of $3,000,000, and for attorney's fees, without alleging any amount.

In its affidavit for the writ of attachment, the plaintiff stated that the defendant was justly indebted to it in the amount of $6,000,123 (the total of the actual and exemplary damages, without reference to its suit for attorney's fees), and that the defendant was a foreign corporation.

Plaintiff's suit is one for damages, exemplary damages and attorney's fees, based upon alleged breach of contract and willful, wrongful, wanton and fraudulent actions. Although a sum certain is sued for as alleged damages, a sum certain is not sued for as attorney's fees. The damages claimed are not liquidated damages, but damages which must be submitted to a jury, or a court within its fact-finding powers, for ascertainment.

■ The longstanding rule in Texas has been that the writ of attachment will not issue in a suit for unliquidated damages. It is the established rule in Texas that while attachments may be maintained in many cases for damages growing out of a breach of contract, even though they are unliquidated, such attachments cannot be allowed in all such suits for damages. The Texas courts hold that, where unliquidated damages are demanded, the contract alleged as the cause of action must afford a rule for ascertaining the damages, so that the

amount with propriety can be averred in the affidavit. If the amount of unliquidated damages claimed are so uncertain that the amount cannot be determined until a jury shall have ascertained it, then attachment will not lie. This rule has been uniformly followed in Texas and has never been questioned. Hochstadder v. Sam, 73 Tex. 315, 11 S.W. 408 (1889); accord, Kildare Lumber Co. v. Atlanta Bank, 91 Tex. 95, 41 S.W. 64 (1897); El Paso National Bank v. Fuchs, 89 Tex. 197, 34 S.W. 206 (1896); see also Gimbel v. Gomprecht, 89 Tex. 497, 35 S.W. 470 (1896); Avery v. Zander, 77 Tex. 207, 13 S.W. 971 (1890).

This rule is still liable, as exemplified by more recent cases in which the rule has been held to be applicable to cases in garnishment. Cleveland v. San Antonio Building & Loan Ass'n, 148 Tex. 211, 223 S.W.2d 226 (1949); see also Butler, Rinehart & Morrison v. McDaniel, 288 S.W.2d 188 (Tex.Civ.App.—Dallas 1956, error ref'd n. r. e.); Thomas v. Buehler, 254 S.W.2d 223 (Tex.Civ.App.—Austin 1953).

■■■ Art. 281, Vernon's Annotated Texas Civil Statutes (1913), provides:

"Nothing in this title (Title 13) shall prevent the issuance of attachments in suits founded in tort or upon unliquidated demands against persons, co-partnerships, associations or corporations upon whom personal service cannot be obtained within this State."

Attachment is a statutory remedy and its validity does not depend upon the truthfulness of the allegations of the affidavit or petition, but upon the compliance with the statute in making the affidavit. Gimbel v. Gomprecht, *supra*. The affidavit in the instant case alleges that defendant is a foreign corporation but does not allege that personal service cannot be obtained within the state. Plaintiff must state truly whether its debt is due in whole or in part, and if due in part only, it must state what part is due and what part is not due. Avery v. Zander, *supra*. The affidavit does not satisfy the requirements of the statute.

It should be noted that no cases were cited by appellant on this issue.

We hold that the district court properly quashed the writ of attachment, but it becomes immaterial, considering the disposition of the case by summary judgment, hereinafter.

## III

### SUMMARY JUDGMENT

The district court granted summary judgment for defendant, upon its motion. It is provided by Rule 56, F.R.Civ. P. that either party may move for summary judgment if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Plaintiff's complaint alleges that the agreement for additional financing was based upon an oral agreement with plaintiff that in consideration of plaintiff's closing the permanent financing and continuing to operate the property, the defendant would make the loan increase to plaintiff to cover plaintiff's operating losses for the first two years of operation of the apartment project beginning August 1, 1964, as contemplated by the Federal Housing Administration regulations and in an amount which would be approved by the F.H.A.

It is undisputed from the pleadings, the depositions on file and the supporting affidavits that (1) F.H.A. did not approve an additional loan in any amount, and (2) Teachers' agreement to make the additional loan was an oral agreement, not supported by any writing, formal or informal.

Mr. David M. Thornton, attorney for 21, testified by deposition to conversations with Mr. Cunningham, representing the F.H.A., and with Messrs. Furlong and Trombly, representing Teachers, as follows:

"Q Did you ask Mr. Cunningham for a confirmation in writing of the FHA's agreement?

"A Sure did.

"Q Did you get it?

"A No.

"Q Why did he tell you he wasn't going to give it to you?

"A Just the same reason Dee didn't want my letter.

"Q What did Mr. Cunningham say to you?

"A Mr. Cunningham said, 'I couldn't give you that agreement under these circumstances with all the trouble this project has had and have us committed to pick up your losses for you staying in there in writing.'

"Q All right. Mr. Thornton, after you had this discussion with Furlong and Trombly and they had made this promise, did you ask them to confirm it in writing?

"A Yes, I did.

"Q And what did they say?

"A The same reason Cunningham gave.

"Q What, specifically? State the reason.

"A Well, at that time, you recall, and subsequent to that time there were all kinds of publicity about Gevinson and there was quite a bit of complaints to the Teachers and to the bank about this loan, and this kind of a deal is—would not look very good.

"Q So they refused to put it in writing?

"A That's right.

"Q In other words, you asked for it in writing and they refused to put it in writing?"

(Depo. of David M. Thornton, p. 51, line 10, to p. 52, line 12)

The witness also testified in the deposition that no one heard the agreement made with Cunningham or the conversation between him and Furlong and Trombly. (pp. 52-53) The following statement made by the witness is also significant:

"A I don't like the word 'agreement' you keep on using, so I might as well get the record straight on that. I don't think it was an agreement. It was a promise on their part, both of them, to do certain things if we stayed in there and operated and managed the property * * *."

(Depo. of David M. Thornton, p. 54, line 15-19) Thornton also testified:

"Q Then without going through your other pleadings, the basis of your present lawsuit is those two statements, one made by Cunningham to you and the other made by Furlong and Trombly; is that right?

"A Promises made, plus the fact of our staying in their and doing that.

"Q I understand. But the point about it is that these conversations, one with Cunningham sometime before November 24—

"A. Yes.

"Q. —and the conversations with Trombly and Furlong on November 24, are the basis of your lawsuit?

"A. Yes, sir.

(Depo. of David M. Thornton, p. 59, lines 12-23)

▬ Plaintiff's cause of action, according to its pleadings and the undisputed facts, is barred by the Statute of Frauds, codified into the laws of Texas, Art. 3995, Vernon's Annotated Texas Civil Statutes, as follows:

Article 3995. [3965] [2543] [2464] Writing required

No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

1. To charge any executor or administrator upon any promise to an-

swer any debt or damage due from his testator or intestate, out of his own estate; or,

2. To charge any person upon a promise to answer for the debt, default or miscarriage of another; or,

3. To charge any person upon any agreement made upon consideration of marriage; or,

4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year; or,

5. Upon any agreement which is not to be performed within the space of one year from the making thereof. Acts 1840, p. 28; P.D. 3875; G.L. vol. 2, p. 202.

The oral promise asserted by Thornton's testimony is clearly within the statute. Not only is the agreement not in writing but, according to Thornton's testimony, defendant refused to put it in writing, and plaintiff was on notice of it from such time. According to the testimony, the oral promise was made on November 24, 1964. And Thornton further testified, at page 44 of his deposition:

 Then Cunningham had told you in Washington—did Cunningham agree on behalf of FHA at that time that they would do it?

A. Yes, he did. He said, "If you will stay in there and operate this project and keep it going, subject to everything else being all right at the end of two years, we will give you a mortgage increase."

Q. Did you understand that that was a firm agreement between you and Cunningham at that time?

A. I certainly did, subject to us being in there and operating the place.

Q. And no other conditions?

A. No.

Q. All you had to do was operate for two years, and you thought that was an agreement for an automatic mortgage increase; is that right?

A. That's right.

Q. And then you went down and told Mr. Bullen and Mr. Fortenberry that you had a firm agreement with FHA that at the end of two years they were going to give you a mortgage increase to pick up the amount of your operating losses, if you had any; is that right?

A. I had a firm promise, as far as I am concerned, from Mr. Cunningham, that the FHA would approve this if we did [45] these things.

The Statute of Frauds bars plaintiff's claim based upon the oral agreement. It involves a mortgage of real estate. A mortgage or other lien upon real estate cannot be given by parol. West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090 (1934); Allen v. Allen, 101 Tex. 362, 107 S.W. 528 (1908); Home Investment Co. v. Fidelity Petroleum Co., 249 S.W. 1109 (Tex.Civ.App., Dallas 1923, err. ref.); Aaron Frank Clothing Co. v. Deegan, 304 S.W. 471 (Tex.Civ. App., San Antonio 1918, err. ref.). The Statute of Frauds further bars the claim based upon the oral agreement as an agreement not to be performed within the space of one year from the making thereof. Paschall v. Anderson, 127 Tex. 251, 91 S.W.2d 1050 (1936); Accord, Chevalier v. Lanes, Inc., 147 Tex. 106, 213 S.W.2d 530 (1948).

 The oral and unenforceable promises of Teachers' representatives, Furlong and Trombly, do not raise an estoppel against Teachers to assert the Statute of Frauds, Sec. 90, Restatement of Contracts, recognized by Texas and other jurisdictions as a statement of the doctrine of promissory estoppel, reads as follows:

"A promise which the promisor should reasonably except to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

From Thornton's testimony, most favorable to 21, we must look to what Mr.

Cunningham, representing FHA told him, that he could not give an agreement under the circumstances, "with all the trouble this project has had and have us committed to pick up your losses for you staying in there, in writing." FHA did not approve an additional loan in any amount. By the undisputed evidence, the failure was in the performance of 21. Promissory estoppel is simply not in the case.

The judgment of the district court is affirmed.