## In re ARGYLL EQUITIES, LLC.

### No. 04–07–00006–CV.

Court of Appeals of Texas,
San Antonio.

March 28, 2007.

Original Mandamus Proceeding.[1]

J. Ken Nunley, Kelly Putney Rogers, Nunley Davis Jolley Cluck Aelvoet L.L.P., Boerne, for appellant.

Kenneth E. Broughton, Lamont A. Jefferson, Mark R. Trachtenberg, Trace Blair, Haynes and Boone, L.L.P., San Antonio, Kent Rutter, Lynne Liberato, Haynes and Boone, L.L.P., Houston, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

Argyll Equities, LLC seeks a writ of mandamus to vacate the trial court's order for a pre-judgment writ of attachment. Argyll argues the attachment order should be set aside because it is based on insufficient proof and lacks specific factual findings. We agree, and therefore, conditionally grant the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

Argyll loaned funds to Servicios Directivos Servia S.A. de C.V. ("SDS") under fourteen non-recourse loan agreements. As collateral, SDS pledged shares of its Grupo TMM S.A. ("TMM") stock, which is publicly traded on the New York Stock Exchange. In all, SDS borrowed $23,157,078.00 from Argyll, and pledged a total of 14,178,193 shares of TMM stock.[2]

A dispute arose about Argyll's authority to sell the pledged stock. Argyll subsequently filed suit for declaratory judgment. SDS counterclaimed, seeking declaratory relief and alleged other claims including breach of contract/anticipatory repudiation, conversion, fraud and/or fraudulent inducement. The trial court granted partial summary judgment in favor of SDS, finding that Argyll, "at the time it sold the stock the subject of this suit, did not under the terms of the loan documents have the legal right to sell the pledged collateral." [3]

SDS filed an application for a pre-judgment writ of attachment supported by the affidavit of TMM's Chief Financial Officer, Juan Fernandez Galeazzi. Relying on this proof, the trial court granted the writ of attachment.[4] The order authorizes SDS to "attach property of Argyll not to exceed a value of $10,387,757.00" and requires the officer attaching the property to retain possession until final judgment or until the property is released in accordance with the law.

When Argyll learned that SDS had filed the $200,000.00 bond required to issue the writ,[5] Argyll commenced the instant proceeding and moved to stay the attachment

---

1. This proceeding arises out of Cause No. 06–261 CCL, styled *Argyll Equities, LLC v. Servicios Directivos Servia S.A. de C.V.*, pending in the County Court at Law, Kendall County, Texas, the Honorable Bill Palmer presiding.

2. Transferred to Argyll by electronic means, the shares of stock are not represented by specific certificates with readily identifiable numbers. The shares of stock are fungible.

3. We do not address the propriety of the trial court's summary judgment ruling in this proceeding.

4. Although Texas Rule of Civil Procedure 592 states that a writ of attachment may be granted *ex parte*, this case does not present such a scenario. *See* TEX.R. CIV. P. 592. Argyll participated in the hearing, where the trial court sustained evidentiary objections to two paragraphs in Galeazzi's affidavit.

5. A writ of attachment may not issue until the applicant has filed a bond with the officer authorized to issue the writ. TEX.R. CIV. P. 592a.

order while this court considered its mandamus petition. We stayed the attachment order and gave SDS and the trial judge an opportunity to respond to Argyll's petition.

### WRIT OF ATTACHMENT REQUIREMENTS

■ A writ of attachment enables a plaintiff to secure a debt by a seizure of property before or after judgment. *E.E. Maxwell Co., Inc. v. Arti Decor, Ltd.,* 638 F.Supp. 749, 753 (N.D.Tex.1986) (applying Texas law). Pre-judgment attachment is a particularly harsh, oppressive remedy. *S.R.S. World Wheels v. Enlow,* 946 S.W.2d 574, 575 (Tex.App.-Fort Worth 1997, orig. proceeding); *Carpenter v. Carpenter,* 476 S.W.2d 469, 470 (Tex.Civ.App.-Dallas 1972, no writ). As a result, the statutes and rules governing this remedy must be strictly followed. *S.R.S. World Wheels,* 946 S.W.2d at 575; *Carpenter,* 476 S.W.2d at 470. An application for a writ of attachment must be supported by the affidavit of a person having knowledge of relevant facts. TEX.R. CIV. P. 592. "The application and any affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence ..." *Id.* The validity of a writ of attachment does not depend on the truthfulness of the allegations, but on compliance with the statute in making the affidavit. *21 Turtle Creek Square, Ltd. v. New York State Teachers' Ret. Sys.,* 425 F.2d 1366, 1369 (5th Cir.1970) (applying Texas law). A writ of attachment is available to a plaintiff in a suit if it proves that:

(1) the defendant is justly indebted to the plaintiff;

(2) the attachment is not sought for the purpose of injuring or harassing the defendant;

(3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and

(4) specific grounds for the writ exist under Section 61.002.

TEX. CIV. PRAC. & REM.CODE ANN. § 61.001 (Vernon 1997).

Here, the trial court's order recites that Argyll is justly indebted to SDS, that SDS is not seeking the attachment for the purpose of injuring or harassing Argyll, and that SDS will probably lose its debt unless the writ of attachment is issued. However, the trial court failed to make any specific factual findings in its order. The trial court's order further states that Argyll owes SDS for property obtained "under false pretenses." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 61.002(9) (Vernon 1997).

### SUFFICIENCY OF SDS's PROOF

■ We first address whether SDS established that Argyll was "justly indebted" to it. TEX. CIV. PRAC. & REM.CODE ANN. § 61.001(1) (Vernon 1997). In the context of attachment proceedings, a "debt" is defined as an obligation to pay a *liquidated* sum on an express or implied contract. *E.E. Maxwell,* 638 F.Supp. at 752. Generally, a writ of attachment is not available when the applicant's claims are for unliquidated damages.[6] *S.R.S. World Wheels,* 946 S.W.2d at 575 (tort claim for unliquidated damages could not be camouflaged as a debt); *Sharman v. Schuble,* 846 S.W.2d 574, 576 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding). Attachment is not appropriate if the amount of the claim is so uncertain that a jury must determine the final amount of damages. *S.R.S. World Wheels,* 946 S.W.2d at 575; *21 Turtle Creek Square,* 425 F.2d at 1369. However, a writ of attachment may issue for unliquidated damages if the underlying

---

**6.** When the defendant cannot be served in Texas, a writ of attachment may issue in a suit for an unliquidated claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 61.005 (Vernon 1997).

contract provides a rule for ascertaining such damages. *21 Turtle Creek Square*, 425 F.2d at 1368.

■ Here, the most fundamental terms of the loan agreements are not in dispute. The loans are for a fixed term, and SDS may not repay the loans for the first eighteen months. Thereafter, if SDS elects to repay the loans before their maturity dates, it must give Argyll thirty days notice of its intent to prepay. Within ten days of full repayment, Argyll is obligated to return the corresponding stock. The loans are non-recourse, meaning SDS could elect to default on the loans, reap the benefits of the monies advanced, and Argyll would have no recourse against SDS. Importantly, the loan agreements do not provide a rule for ascertaining the amount of damages under the present circumstances.

In his affidavit, Galeazzi asserts that SDS's "debt" is the aggregate value of TMM stock still in Argyll's possession, minus the principal balance of the remaining loans. In employing this formula, however, Galeazzi makes assumptions and supplies variables, such as the value of the stock which obviously fluctuates.[7] But any amounts ultimately due to SDS depend upon whether and when SDS repays each loan and the stock's value at the relevant time. Far from being readily ascertainable, any amounts due to SDS are speculative. Consequently, SDS failed to demonstrate that Argyll was "justly indebted" to it.

■ We now turn to whether SDS established that it would probably lose any debt without the issuance of a writ of attachment. SDS's admissible proof is devoid of facts about Argyll's financial status.[8] *See E.E. Maxwell*, 638 F.Supp. at 752 (affidavit was sufficient to support attachment when it expressly stated the defendant was insolvent or imminently insolvent and unable to pay any judgment rendered in favor of the plaintiff). The only exhibit purporting to depict Argyll's financial condition—a balance sheet prepared by Argyll—is disregarded in Galeazzi's affidavit as having "no analytical value." Galeazzi's affidavit states "SDS is extremely concerned about Argyll's financial viability and its wherewithal to satisfy [its] debt" "based on Argyll's lack of candor" and "past disposal of SDS' [c]ollateral." These statements reflect SDS's apprehension but reveal nothing about Argyll's ability to pay a judgment. Galeazzi points to lawsuits pending against Argyll and its "apparent movement of assets offshore." Without a financial context, however, these events do not show that SDS would be unlikely to recoup a future judgment. We hold that SDS failed to establish it will probably lose its debt without a writ of attachment.

## FORM OF THE ATTACHMENT ORDER

■ Next Argyll contends the trial court abused its discretion by omitting from its attachment order detailed factual findings to support each of the general statutory grounds. We agree. "The court, in its order granting the application,

---

7. Galeazzi's affidavit asserts the debt due to SDS is $15,294,890.25. "This figure accounts for the fact that SDS has paid $4,351,003 in principal, and Argyll has only returned 1,777,842 shares." Galeazzi valued TMM stock at $2.75 per share, the price it closed at on October 3, 2006. Despite Galeazzi's calculations, the trial court authorized

SDS to attach property "not to exceed $10,387,757."

8. Rule 592 provides that "facts may be stated based upon information and belief if the grounds of such belief are specifically stated." Tex.R. Civ. P. 592. Galeazzi's entire affidavit is based on his personal knowledge.

shall make specific findings of facts to support the statutory grounds found to exist ..." *See* TEX.R. CIV. P. 592. Thus, Texas Rule of Civil Procedure 592 imposes a duty on the trial court to delineate in its order specific findings of fact to support each of the general statutory grounds.

■ SDS asserts that Argyll waived this argument by failing to object to the form of the order. We disagree. As we stated previously, the statutes and rules governing pre-judgment writs of attachment mandate strict compliance. *See S.R.S. World Wheels*, 946 S.W.2d at 575; *21 Turtle Creek Square*, 425 F.2d at 1369. The current rules governing writs of attachment, garnishment, and sequestration were designed to ensure that such proceedings fulfill constitutional due process requirements. *See* 3 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* § 11.94 (2d ed.2000). The onus was on SDS to obtain an attachment order that satisfied the requirements set out in Rule 592.

Alternatively, SDS argues that even if the order is defective, the error is harmless. Since we have concluded that SDS's proof was insufficient to authorize the attachment order, the trial court's lack of factual findings is not harmless. We hold that the trial court erred in failing to include in its attachment order specific factual findings tailored to this case.

■ In sum, SDS failed to quantify the amount that Argyll was "justly indebted" to it and establish that it will probably lose its debt without a writ of attachment. The trial court omitted factual findings from its order despite a clear duty to make specific findings. Accordingly, the trial court clearly abused its discretion in granting the writ of attachment. When the trial court commits a clear abuse of discretion and there is no adequate legal remedy, a writ of mandamus is appropriate. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding).

■ According to Argyll, the execution of the writ of attachment will freeze assets needed to meet its present operating costs and will hinder its ability to conduct business with other brokers. Because of the heavy-handed nature of a writ of attachment and its immediate effect on Argyll's operations, we conclude Argyll has no other adequate legal remedy. *See S.R.S. World Wheels*, 946 S.W.2d at 575 (holding mandamus relief is appropriate to challenge an improperly obtained writ of attachment because the relator had no adequate remedy at law to reobtain possession of its property). We therefore conditionally grant the writ of mandamus. The trial court is ordered to vacate its November 2, 2006 order granting writ of attachment within ten days of the date of this opinion. If the trial court does not comply, the writ of mandamus shall issue.