**Petition for Writ of Mandamus Conditionally Granted, Stay Order Lifted, and Opinion filed April 7, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-01010-CV

---

### IN RE WARRIOR ENERGY SERVICES CORP., Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-46881**

---

### O P I N I O N

Relator and defendant below, Warrior Energy Services Corp., seeks mandamus relief from an order compelling it to deposit $2,064,042.19 into the trial court's registry before the claims asserted against it have been adjudicated. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. The underlying lawsuit is a breach of contract action against Warrior. Plaintiff and real party in interest, Oilfield Specialties, LLC, alleges Warrior breached an agreement to pay royalties.

We conditionally grant the petition for writ of mandamus. Our stay order of December 30, 2019 is lifted.

## Background

The underlying dispute concerns royalties for a technology system. While employed by Warrior, Don Umphries and Gabe Williger created certain products and processes known as the WIPR technology. Warrior licensed the right to use WIPR from Umphries and Williger for 25% of the gross revenues related to WIPR. Oilfield is a company created by Umphries and Williger that invoices Warrior. The main dispute is whether the 25% royalty applies per person or collectively.

Oilfield sued Warrior in 2018 for breach of contract (the "2018 Lawsuit"). Oilfield contends Warrior owes 25% of WIPR gross revenue to Umphries and a separate 25% to Williger. Warrior disputes that interpretation, contending it paid lesser amounts for seven years until, in the 2018 Lawsuit, Oilfield "reversed course" and claimed Warrior was required to pay a total of 50% of WIPR gross revenue. A jury agreed with Oilfield, and the trial court signed a judgment in Oilfield's favor for over $11 million. Warrior superseded the judgment by filing a supersedeas bond and appealed the judgment.[1]

After the jury returned its verdict but before the trial court signed the judgment in the 2018 Lawsuit, Oilfield filed a second suit (the "2019 Lawsuit")—the one underlying this mandamus proceeding. The 2018 Lawsuit was for past damages, and the 2019 Lawsuit is said to be for contract damages accruing for breaches since the 2018 verdict and for a permanent injunction.

---

[1] The appeal is pending in this court as No. 14-20-00069-CV, *Warrior Energy Servs. Corp. v. Oilfield Specialties, LLC*. Warrior filed a supersedeas bond on January 17, 2020, and the district clerk has approved it. Thus, enforcement of the judgment in the 2018 Lawsuit is stayed. Tex. R. App. P. 24.1(f).

In early December 2019, Oilfield filed a verified motion in the 2019 Lawsuit asking the court to require Warrior to deposit money into the court's registry in anticipation of the damages Oilfield contended it would establish as a result of the breaches since the 2018 Lawsuit verdict. The motion alleges Warrior's financial situation is precarious for various reasons. The trial court held a hearing on the motion on December 18, 2019, and signed an order granting the motion the same day. The December 18 order requires Warrior to deposit (1) $2,064,042.19 into the court's registry by December 25, 2019; and (2) an amount equal to 50% of gross revenue related to WIPR on a monthly basis until the 2019 Lawsuit is resolved.

Before the deadline for compliance, Warrior petitioned for a writ of mandamus and filed a motion for emergency stay of the order. We granted the emergency relief in part, staying the requirement for ongoing future deposits.[2] On January 2, 2020, the trial court signed a modified order sua sponte that repeats the requirement for an initial deposit of $2,064,042.19 but deletes the requirement for ongoing future deposits. Warrior has filed a supplemental petition complaining of the modified order as well. Because the December 18 and January 2 orders both require a $2,064,042.19 initial deposit, we refer to them as a single order.

## Issues

As respondent has withdrawn the portion of the order requiring future deposits, we limit our consideration of Warrior's petition to the portion of the order compelling the initial deposit. Warrior contends the trial court's order amounts to a writ of attachment governed exclusively by Civil Practice and Remedies Code chapter 61. Because chapter 61's requirements were not satisfied, Warrior asserts, the trial court abused its discretion in compelling the deposit. Warrior alleges it

---

[2] The request for emergency relief regarding the initial deposit became moot when Warrior deposited that amount into the trial court's registry on December 26, 2019.

lacks an adequate appellate remedy to cure the trial court's error because it is deprived of the use of its money, the orders will be moot by the time an appeal from a final judgment may be taken, and the parties' litigation footing has become unfairly imbalanced.

Oilfield maintains the trial court's authority to sign the orders could derive from either of two sources: chapter 61 or the court's inherent authority. Oilfield expressly disclaims reliance on chapter 61, however, and asserts the court acted within its discretion under its inherent authority.[3] Oilfield offers no argument as to whether Warrior lacks an adequate appellate remedy.

### Mandamus Standard

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy at law, such as an appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). "The relator must establish that the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). We review the trial court's determination of the legal principles controlling its ruling with limited deference. *See id*.

---

[3] Although Oilfield requested permanent injunctive relief in its petition, it did not seek a temporary injunction to compel payment of anticipated damages into the registry.

## Analysis

### A.  Abuse of discretion

Effectively, the trial court's order is a pre-judgment writ of attachment.[4]  This court conditionally granted mandamus relief as to a similar order in *In re Wakefield*. 2010 WL 5237857, at *1.  There, a party sued Wakefield for breach of contract, and the trial court ordered Wakefield to deposit into the registry, before trial, a sum certain allegedly resulting from the breach.  *Id*.  We held the trial court abused its discretion because the requirements for a writ of attachment under chapter 61 were not met.  *Id*.  Because pre-judgment attachment is a harsh, oppressive remedy, the statutes and rules governing this remedy must be strictly followed.[5]

What was true in *In re Wakefield* is true here.  Oilfield did not comply with chapter 61's strict requirements, and it expressly disclaims reliance on chapter 61 to support the order.  Generally, a trial court abuses its discretion if it compels a pre-judgment deposit into the registry when the movant does not meet chapter 61's requirements.  *Id.* at *1.

Oilfield argues the order is justifiable on another ground: inherent authority. According to Oilfield, inherent authority empowers the court to require a pre-adjudication deposit of anticipated contract damages into the registry when a party's financial wherewithal to satisfy a potential future judgment is questionable.  Oilfield

---

[4] *In re Wakefield*, No. 14-10-01160-CV, 2010 WL 5237857 (Tex. App.—Houston [14th Dist.] Dec. 15, 2010, orig. proceeding) (mem. op.); *Sharman v. Schuble*, 846 S.W.2d 574, 576 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding); *see In re Grupo Consejero Mundial, S.A. de C.V.*, No. 13-11-00493-CV, 2012 WL 1073349, at *6 (Tex. App.—Corpus Christi Mar. 29, 2012 orig. proceeding) (mem. op.); *Behringer Harvard Royal Island, LLC v. Skokos*, No. 05-09-00332-CV, 2009 WL 4756579, at *3 (Tex. App.—Dallas Dec. 14, 2009, orig. proceeding) (mem. op.).

[5] *In re Argyll Equities, LLC*, 227 S.W.3d 268, 271 (Tex. App.—San Antonio 2007, orig. proceeding); *see S.R.S. World Wheels v. Enlow*, 946 S.W.2d 574, 575 (Tex. App.—Fort Worth 1997, orig. proceeding); *Block 145, Ltd. v. Pace*, 617 S.W.2d 820, 822 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

cites a line of cases rooted in *Castilleja v. Camero*, 414 S.W.2d 431, 433-34 (Tex. 1967).[6]

In *Castilleja*, Severa Camero obtained a finding that Alberto Castilleja had $17,000 in a bank in Mexico that belonged to Camero. *Id.* at 432. The court signed a judgment awarding Camero $17,000 and permanently enjoining Castilleja from assigning, removing, or dissipating that sum, except to deposit it into the court's registry as supersedeas. *Id.* Castilleja appealed the judgment but filed no supersedeas bond and did not deposit the money into the registry. *Id.* Camero attempted to execute the judgment but was unsuccessful. *Id.* at 432-33. Camero then filed a second lawsuit for a writ of mandamus compelling Castilleja to deposit the sum into the registry. Camero alleged that Castilleja was insolvent, that the specific fund was in Mexico and outside the court's jurisdictional reach, and that Castilleja threatened to leave the jurisdiction. *Id.* at 433. The trial court granted the writ, and the court of appeals affirmed. The supreme court also affirmed, concluding the order conserved the disputed property pending final judgment on the merits of the appeal. As the court noted: the trial court's injunction did not protect the fund because it was in Mexico and out of the court's or Camero's reach; Castilleja did not supersede the judgment; and Castilleja testified that he did not intend to satisfy the judgment even if he lost the appeal. *Id.* The court stated that when ownership of a specific fund is in dispute and the fund was in danger of being lost or depleted, a court can order payment of the disputed funds into its registry until ownership is finally determined. *See id.* The thrust of the court's ruling was that a trial court may

---

[6] Oilfield's citations include: *In re G-M Water Supply Corp.*, No. 12-16-00223-CV, 2016 WL 6873181, at *2 (Tex. App.—Tyler Nov. 22, 2016, orig. proceeding) (mem. op); *Zhao v. XO Energy LLC*, 493 S.W.3d 725, 736-37 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (appeal consolidated with mandamus); *In re Reveille Res. (Tex.) Inc.*, 347 S.W.3d 301, 304 (Tex. App.—San Antonio 2011, orig. proceeding); *Behringer*, 2009 WL 4756579, at *4; *N. Cypress Med. Ctr. v. St. Laurent*, 296 S.W.3d 171, 178-79 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Prodeco Expl., Inc. v. Ware*, 684 S.W.2d 199, 201 (Tex. App.—Houston [1st Dist.] 1984, no writ.).

sign post-judgment orders not inconsistent with the original judgment to conserve the property—there, a specific fund, not a money judgment—which is the subject of appeal. *Id.* Trial courts have long possessed authority to enforce their judgments,[7] including in appropriate cases by attachment of specific property. *E.g.*, Tex. R. Civ. P. 308.[8]

*Castilleja* involved a form of post-judgment relief to protect specific property awarded in the judgment pending an appeal. This case does not. The trial court's order here compels a party to deposit anticipated contract damages into the registry before trial based on the assertion that it may not be able to satisfy any ultimate judgment. Based on *Castilleja*, several appellate courts, including this one, have stated that a trial court has inherent authority to order a party to pay disputed funds into the court's registry before trial if there is evidence the funds are in danger of being lost or depleted. *E.g.*, *In re G-M Water Supply Corp.*, 2016 WL 6873181, at *4; *Zhao*, 493 S.W.3d at 736; *O'Brien v. Baker*, No. 05-15-00489-CV, 2015 WL 6859581, at *3 (Tex. App.—Dallas Nov. 9, 2015, orig. proceeding) (mem. op.); *In re Reveille Res. (Tex.) Inc.*, 347 S.W.3d at 304; *N. Cypress Med. Ctr.*, 296 S.W.3d at 178-79. But *Castilleja* was about post-judgment remedies to conserve an asset that was the subject of a judgment during the appeal's duration; it did not address an order to deposit disputed funds—here, anticipated contract damages—into the court's registry before trial. The cases reading *Castilleja* as permitting such relief

---

[7] *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) ("The general rule is that every court having jurisdiction to render a judgment has the inherent power to enforce its judgments."); *Harris Cty. Appraisal Dist. v. West*, 708 S.W.2d 893, 896 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding).

[8] "The court shall cause its judgments and decrees to be carried into execution; and where the judgment is for personal property, and it is shown by the pleadings and evidence and the verdict, if any, that such property has an especial value to the plaintiff, the court may award a special writ for the seizure and delivery of such property to the plaintiff; and in such case may enforce its judgment by attachment, fine and imprisonment."

commit no discussion to *Castilleja*'s applicability or the trial court's inherent authority to require pretrial deposits of anticipated contract damages as an alternative to chapter 61. The Dallas Court of Appeals, in contrast, has concluded a trial court lacks authority—beyond the purview of the attachment statutes—to order that funds be deposited into the court's registry to generally secure payment of a possible future judgment. *Behringer*, 2009 WL 4756579, at *4. This court cited *Behringer* as support for its decision in *In re Wakefield*. 2010 WL 5237857, at *1.

The issue of *Castilleja's* applicability need not detain us. Presuming without deciding that it applies to the order at issue, *Castilleja*'s standards as Oilfield interprets them have not been met on the present record. To begin with, both Oilfield and our dissenting colleague say the funds in dispute are in danger of being lost or depleted. We disagree.

Oilfield was required to support its motion with competent evidence. *See Zhao*, 493 S.W.3d at 736-37; *In re Reveille Res. (Tex.) Inc.*, 347 S.W.3d at 304; *O'Brien*, 2015 WL 6859581, at *3; *N. Cypress Med. Ctr.*, 296 S.W.3d at 178-79. Oilfield filed a verified motion containing the following relevant factual assertions: (1) since the verdict in the 2018 Lawsuit, Warrior owes Oilfield an additional $2,064,042.19 in unpaid royalties as of November 30, 2019; (2) Warrior is a subsidiary of Superior Energy Services, Inc.; (3) Superior's stock price has dropped from approximately $18/share when the first suit was filed to $.29/share; (4) Superior announced a net loss of $38.4 million for the third quarter of 2019 and a net loss of $71.1 million for the second quarter of 2019; (5) Warrior has earned an average of $545,000 a month in gross revenue from its use of the WIPR patents during this same period; and (6) on September 26, 2019, Superior "was notified by the New York Stock Exchange ("NYSE") of its determination to commence proceedings to delist the Company's common stock and to suspend trading of the

Company's common stock due to 'abnormally low' price levels." Oilfield supported these assertions with true and correct copies of Superior's website stock information and two Superior press releases. Further, based on an affidavit by Umphries, Oilfield asserted several Warrior employees in the WIPR division, including Umphries, were terminated in November 2019, and that Warrior informed Umphries it intended to discontinue the WIPR division and cease offering WIPR to customers.

At the hearing, Oilfield offered and the court admitted a copy of a news report stating Superior announced an agreement to merge its U.S. energy business with another entity. According to the report, the merger was expected to close in the first quarter of 2020. The report quotes a Superior representative's belief that the transaction will reduce debt, lower interest costs, and assist Superior in generating cash flow. Oilfield offered no other exhibits at the hearing and presented no witnesses.

Accepting as true all of Oilfield's evidence, it focuses on Superior, which is an entity separate from Warrior. Absent exceptional circumstances and evidence to support collapsing corporate distinctiveness, Superior and Warrior as parent and subsidiary cannot be treated as one and the same.[9] Even if Superior's financial standing was relevant, Oilfield showed that Superior has incurred recent losses and that its stock price has depreciated substantially, but Oilfield offered no proof of how those losses or depreciation affect Warrior and why (or when) they would probably deplete Warrior's assets to a degree that Warrior is likely unable to satisfy a judgment. Regarding the relevant entity, Warrior, the record contains no evidence

---

[9] Courts presume a parent corporation and its separate corporate subsidiary are distinct legal entities. *See Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 825 (Tex. App.—Texarkana 2004, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002)); *Valero S. Tex. Processing Co. v. Starr Cty. Appraisal Dist.*, 954 S.W.2d 863, 866 (Tex. App.—San Antonio 1997, pet. denied).

of, among other things, Warrior's current net worth, Warrior's current assets (including available cash in any bank accounts), Warrior's current cash flow, Warrior's current or long-term debt obligations, or Warrior's source of revenue, if any, other than that derived from WIPR services. Further, unlike *Castilleja*, our record shows that Warrior superseded the underlying judgment with a $13,000,000 bond, thus indicating Warrior's intent to pay the 2018 judgment if it is affirmed. Moreover, Oilfield offered no evidence that Warrior does not intend to pay any future judgment in the 2019 Lawsuit or that Warrior will be unable to secure a similar supersedeas bond if the need arises. Oilfield's assertion that Warrior has possession of funds in danger of loss or depletion is utterly speculative.

Assuming *Castilleja* applies and when the record reveals insufficient evidence that funds are in danger of being "lost or depleted," the trial court abuses its discretion by ordering funds deposited in the registry of the court pretrial, and mandamus relief from such an order is appropriate. *E.g.*, *O'Brien*, 2015 WL 6859581, at *3 (granting mandamus); *In re Reveille Res. (Tex.) Inc.*, 347 S.W.3d at 304 (granting mandamus); *N. Cypress Med. Ctr.*, 296 S.W.3d at 178-79 (granting mandamus); *In re Deponte Invs.*, No. 05-04-01781-CV, 2005 WL 248664, at *2 (Tex. App.—Dallas Feb. 3, 2005, orig. proceeding) (mem. op.) (granting mandamus) ("[T]he Allens were required to present evidence the revenues in Deponte's possession were in danger of being lost or depleted. They did not do so. We conclude that absent any evidence, the trial court abused its discretion in ordering Deponte to deposit the funds into the registry of the court.").

Because Oilfield presented no legally sufficient evidence to demonstrate that the "disputed funds" were in danger of being "lost or depleted," the trial court's order was improper and an abuse of discretion under *Castilleja*. For that reason, we need not address Warrior's additional contention that a trial court's inherent power to

require a registry deposit arises only when a specific, identifiable asset or fund is in danger of loss or depletion. *See Castilleja*, 414 S.W.2d at 433.

## B.     Inadequate appellate remedy

In determining whether appeal is an adequate remedy, appellate courts consider whether the benefits outweigh the detriments of mandamus review. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding); *N. Cypress Med. Ctr.*, 296 S.W.3d at 179. Because this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. We also consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id.* Finally, we consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.*

This and other appellate courts have found relief by ordinary appeal inadequate to cure a trial court's abuse of discretion in compelling a prejudgment registry deposit. *E.g.*, *G-M Water Supply*, 2016 WL 6873181, at *3; *O'Brien*, 2015 WL 6859581, at *3; *In re Reveille Res. (Tex.) Inc.*, 347 S.W.3d at 304; *N. Cypress Med. Ctr.*, 296 S.W.3d at 178-79; *In re Wakefield*, 2010 WL 5237857, at *1; *In re Deponte Invs.*, 2005 WL 248664, at *2.

Warrior contends it lacks an adequate remedy by ordinary appeal because the order: (1) deprives it of the use of its own money; (2) will become moot once the court signs a judgment in the 2019 Lawsuit and will therefore escape appellate

review, given that interlocutory review is unavailable; and (3) leaves the parties on imbalanced footing.

### 1.   *Deprivation of use of money*

Warrior maintains an appeal cannot restore its rights to invest and spend its funds as it chooses during the pendency of Oilfield's lawsuit. *See N. Cypress Med. Ctr.*, 296 S.W.3d at 179 (concluding appeal was inadequate to cure harm attendant to being deprived of use of one's own money); *accord G-M Water Supply*, 2016 WL 6873181, at *3. The Supreme Court of Texas has held deprivation of the use of money does not by itself render an appeal inadequate to cure the harm:

> KCSI argues that its remedy by appeal is inadequate because the trial court has improperly deprived it of the "valuable use" of its own money. That is not the permanent loss of substantial rights; it is really only a complaint that the normal appellate remedy is too slow. As we have repeatedly held, the cost or delay incident to pursuing an appeal does not make the remedy inadequate.

*In re Kansas City S. Indus., Inc.*, 139 S.W.3d 669, 670 (Tex. 2004) (orig. proceeding). However, *KCSI* was decided before *Prudential*. We conclude that deprivation of the use of money is a factor properly considered under *Prudential*'s balancing test for evaluating the adequacy of an appeal. That factor supported mandamus relief in *North Cypress Medical Center*, and Oilfield does not attempt to distinguish that case. *N. Cypress Med. Ctr*., 296 S.W.3d at 179.

### 2.   *Evades meaningful appellate review*

Interlocutory review of a prejudgment order to deposit funds into the court's registry is not available, and the order itself will cease to be of effect once a judgment is rendered. *See G-M Water Supply*, 2016 WL 6873181, at *3. Consequently, any appeal of such an order after judgment would become moot. *Id*. With certain exceptions, a court of appeals may not consider moot issues. *See O'Hern v.*

*Mughrabi*, 579 S.W.3d 594, 600–01 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (considering only those issues for which a live controversy still existed). The Tyler Court of Appeals wrote:

> [A] party ordered to deposit funds during the pendency of the lawsuit would not only be deprived of the use of its funds, but would be precluded from challenging the trial court's order by appeal. This is because, with interlocutory appeal unavailable, the party would be required to wait until the suit's conclusion to appeal the order. At that time, the order to deposit funds would no longer be in effect, which would render an appeal moot. Without mandamus relief, a trial court could freely order that funds be deposited into its registry without appellate review.

*G-M Water Supply*, 2016 WL 6873181, at *3. We agree with our sister court that ordinary appeal is an inadequate remedy for such an order.

## Conclusion

We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its orders signed December 18, 2019 and January 2, 2020 requiring Warrior to deposit funds into the court's registry. We are confident the trial court will act in accordance with this opinion. The writ of mandamus shall issue only if the trial court fails to do so.

/s/     Kevin Jewell
        Justice

Panel consists of Justices Wise, Jewell, and Poissant.

13