**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00182-CV**
_____

**MARC VINSON, Appellant**

**V.**

**CARLO CIVELLI AND ASTER**
**CAPITAL S.A. (LTD) PANAMA, Appellees**

_____

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-11-16535-CV**
_____

**MEMORANDUM OPINION**

Marc Vinson ("Vinson," "Appellant" or "Defendant") filed an interlocutory appeal from the trial court's denial of his special appearance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). We reverse the trial court's order denying Vinson's special appearance, and we render judgment dismissing claims brought by Carlo Civelli and Aster Capital S.A. (LTD) Panama (collectively "Appellees" or "Plaintiffs") against Vinson for lack of personal jurisdiction.

1

Relevant Background

On November 2, 2023, Carlo Civelli ("Civelli"), a citizen of Switzerland, and Aster Capital S.A. (LTD) Panama ("Aster Panama"), a Panamanian company owned by Civelli, filed Plaintiffs' Original Petition against Vinson for conversion, fraud, statutory fraud, conspiracy to commit fraud, fraudulent transfer, and constructive trust. In Civelli and Aster Panama's Original Petition, they allege that Vinson is a U.S. citizen with a residence in Singapore and with sufficient contacts with the State of Texas. Civelli and Aster Panama allege causes of action against Vinson for conversion, statutory fraud, fraud, and fraudulent transfer relating to a fraudulent scheme while Vinson was working in Houston for InterOil, a company owned by Vinson's uncle, Philippe Mulacek ("Mulacek"). The scheme allegedly involved Vinson and Mulacek stealing InterOil stock shares held in an account for Aster Panama at JPMorgan Chase Bank and transferring them to an account at the Bank of Singapore under the name of Aster Capital, Inc., a Brunei company (hereinafter "Aster Brunei"). In the Petition, Civelli and Aster Panama also allege causes of action against Vinson for statutory fraud and fraud based on Vinson's collaboration with Mulacek to provide a fraudulent document, labeled "Letter of Wishes[,]" that addressed Mulacek's allegations in ongoing litigation between Plaintiffs and Mulacek in a federal case in the Southern District of Texas.

On December 13, 2023, Vinson filed a special appearance arguing that he is a Singapore resident not subject to personal jurisdiction in Texas, and he attached evidence in support of his special appearance. Vinson asserts that the case has no link to Texas, that he is not subject to general jurisdiction because he is not domiciled in Texas, and that none of the Plaintiffs' claims arise out of any conduct or tort by Vinson in Texas. As for Plaintiffs' claims for conversion, statutory fraud,[1] fraud, conspiracy to commit fraud, and fraudulent transfer related to Vinson's alleged transfer of InterOil shares from Aster Brunei (hereinafter "InterOil Share Theft Claims"), Vinson argues that Plaintiffs do not explain how the stock transfer constitutes conduct committed in Texas nor does it show any conduct of Vinson. As for Plaintiffs' claims for statutory fraud, fraud, and conspiracy to commit fraud related to the alleged fraudulent Letter of Wishes in the federal case (hereinafter "Letter of Wishes Claims"), Vinson argues that Plaintiffs have not alleged that the facts alleged constitute conduct of Vinson in Texas. The parties filed responsive pleadings to Vinson's special appearance.

On December 13, 2023, Vinson filed his Original Answer Subject to Special Appearance, and his general denial answer stating it is "subject to and without waiving his Special Appearance[]" and that "[u]nder Texas Rule of Civil Procedure

---

[1] Plaintiffs' statutory fraud claim is beneficiary of fraud under section 27.01(d) of the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code Ann. § 27.01(d).

3

120a(1), this Answer does not waive Defendant's Special Appearance or subject him to general jurisdiction in Texas." On January 5, 2024, Vinson filed his Motion to Dismiss Under Texas Rule of Civil Procedure 91a and therein he asserts that Plaintiffs' claims arising out of allegations of perjury and spoliation have no basis in law. On the first page of the Rule 91a Motion to Dismiss, Vinson cited and quoted Rule 91a.8 and noted that "[t]his Motion to Dismiss does not waive Vinson's Special Appearance." The parties subsequently filed responsive pleadings related to the Rule 91a Motion to Dismiss.

Vinson's Rule 91a Motion to Dismiss was set for a hearing on February 2, 2024, reset for February 9, 2024, and reset again and placed on the trial court's submission docket for February 16, 2024. On March 3, 2024, the trial court signed an Order Denying Vinson's Motion to Dismiss. On April 16, 2024, the trial court signed an Order Denying Plaintiffs' Motion for Continuance of the April 19, 2024 Special Appearance Hearing. The trial court's order states that it denied the motion "as moot as the Special Appearance has not been heard prior to motion to transfer or 91a motion[] and thus is violative of due order of hearings." On April 12, 2024, Civelli and Aster Panama filed an Amended Petition asserting the same causes of action against Vinson as in Plaintiffs' Original Petition. On April 23, 2024, the trial court signed an Order Denying Vinson's Special Appearance after "having reviewed the Special Appearance, all documents in the Court's file, and the arguments of

4

counsel, if any[.]" Vinson timely filed this interlocutory appeal from the Order denying his special appearance.

## Issues on Appeal

In his first issue, Vinson argues that the trial court abused its discretion in disregarding Rule 91a.8's non-waiver provision by finding that Vinson waived his special appearance by obtaining a ruling on his 91a motion to dismiss before he obtained a ruling on his special appearance. In his second issue, Vinson challenges the legal and factual sufficiency of the evidence supporting personal jurisdiction over Vinson considering that he lives in Singapore and that all his alleged conduct occurred there.

## Standard of Review and Applicable Law

We review the trial court's ruling on a special appearance, including any determination of whether the defendant waived his special appearance, under a de novo standard of review. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013) (an appellate court reviews whether a court has personal jurisdiction over a nonresident defendant under a de novo standard of review) (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (same); *Caviness v. High Profile Promotions, Inc.*, No. 03-17-00553-CV, 2019 Tex. App. LEXIS 2735, at *13 (Tex. App.—Austin Apr. 5, 2019, no pet.) (mem. op.) ("We review the trial court's

ruling on a special appearance, including any determination of whether the defendant waived his special appearance, under a de novo standard of review."); *Global Paragon Dallas, LLC v. SBM Realty, LLC*, 448 S.W.3d 607, 611 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("We review de novo whether [the defendant] waived its special appearance by failing to comply with Rule 120a."); *Moore v. Pulmosan Safety Equip. Corp.*, 278 S.W.3d 27, 32 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (special-appearance waiver determination is reviewed de novo).[2] There being no timely filed findings of fact and conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. Implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency. *Id.* When jurisdictional facts are undisputed, we need not consider any implied findings of fact, and we consider only the legal question whether the undisputed facts establish Texas jurisdiction. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Moncrief*

---

[2] We note Vinson cites to this Court's 2005 opinion in *In re M.G.M.*, 163 S.W.3d 191, 200-01 (Tex. App.—Beaumont 2005, no pet.), for the proposition that we should apply an abuse of discretion standard of review to the trial court's ruling on whether Vinson has waived his special appearance. In light of the Texas Supreme Court's application of the de novo standard of review to a trial court's determination of whether it has personal jurisdiction over a nonresident defendant as stated in *BMC Software*, *Moki Mac*, and *Moncrief Oil*, as well as other opinions by our sister courts subsequent to *In re M.G.M.*, which indicate a de novo standard applies to a waiver determination, we decline to follow *In re M.G.M.*

*Oil Int'l, Inc.*, 414 S.W.3d at 150 n.4). When reviewing Appellees' jurisdictional allegations, we ask only whether the allegations are sufficient to invoke the exercise of personal jurisdiction over Appellant without regard to the merits of their claims. *See Booth v. Kontomitras*, 485 S.W.3d 461, 477 (Tex. App.—Beaumont 2016, no pet.).

A trial court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction is authorized by statute and is consistent with federal and state constitutional due process guarantees. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The Texas long-arm statute provides that a nonresident does business in the state if the nonresident commits certain acts in Texas, including, but not limited to, the following:

> (1) contracts by mail or otherwise with a Texas resident and either party
> is to perform the contract in whole or in part in this state;
> (2) commits a tort in whole or in part in this state; or
> (3) recruits Texas residents, directly or through an intermediary located
> in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042. Although an allegation of jurisdiction may satisfy the Texas long-arm statute, the allegation may not necessarily satisfy the United States Constitution. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149. As a result, even if a court determines that facts satisfy the Texas long-arm statute, the court must also examine the facts to determine whether the exercise of personal

7

jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

Asserting personal jurisdiction over a nonresident defendant comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction comports with traditional notions of fair play and substantial justice. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). The minimum contacts analysis requires "'some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus is on the defendant's activities and expectations. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Moki Mac*, 221 S.W.3d at 575; *see also Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

A defendant's contacts may support either general jurisdiction or specific jurisdiction. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). Continuous and

8

systematic contacts with Texas may support general jurisdiction, while specific jurisdiction exists when the cause of action arises out of or relates to specific purposeful activities of the defendant in Texas. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150.[3]

Specific jurisdiction exists where there is evidence that the defendant purposefully availed itself of the forum's jurisdiction by contacts or activities in the forum state, and the cause of action arises from or relates to those contacts or activities. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-60 (2021); *Retamco Operating, Inc.*, 278 S.W.3d at 338 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *BMC Software*, 83 S.W.3d at 795-96. Specific jurisdiction involves a "claim-by-claim" analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation. *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 413 (Tex. 2023) (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150). However, a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150-51. There must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Id.* at 156. We apply three considerations to determine purposeful availment:

---

[3] Because Plaintiffs only asserted specific jurisdiction as a basis for personal jurisdiction over Appellant, we need not discuss general jurisdiction and limit our discussion and analysis to specific jurisdiction.

9

- "[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person";
- "The contacts relied upon must be purposeful," not "random, fortuitous, or attenuated"; and
- The defendant "must seek some benefit, advantage[,] or profit by availing itself of [Texas's] jurisdiction."

*See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413-14 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151). "Where the defendant has 'deliberately' engaged in significant activities within a state, he 'manifestly has availed himself of the privilege of conducting business there.'" *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 9 (Tex. 2021) (quoting *Burger King Corp.*, 471 U.S. at 475-76).

The plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *Id.* at 8. The burden then shifts to the defendant to negate all bases of jurisdiction in the allegations. *Id.* The plaintiff defines the scope and nature of the lawsuit, so the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

> The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction[.]

*Id.* at 659 (footnotes omitted). To bring a defendant within reach of the Texas long-arm statute for a tort claim, the plaintiff needs to plead that the defendant committed tortious acts in Texas. *Id.* at 658-59; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). Specific jurisdiction must turn on a defendant's contacts, not where the defendant "directed a tort." *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 789-90. The concept that a defendant may be subject to specific jurisdiction in Texas based solely on allegations that he committed tortious activity in another state was considered and rejected in *Michiana. See id.* at 790-92.

Waiver

In issue one, Vinson argues that the trial court erred in determining that Vinson waived his special appearance by obtaining a ruling on his Rule 91a motion to dismiss before a ruling on his special appearance. According to Vinson, Rule 91a.8 expressly provides that a party filing a Rule 91a motion to dismiss or obtaining a ruling on the motion does not waive a special appearance. Appellees argue that Vinson waived his special appearance because he filed a motion to dismiss and a special appearance and requested and obtained a hearing on the motion to dismiss before requesting a hearing on the special appearance. Appellees argue that Vinson violated the due-order-of-hearing requirement under Rule 120a of the Texas Rules of Civil Procedure. Appellees contend that Rule 91a does not address the due-order-

of-hearing rule and none of its language suggests the rule was intended to circumvent the due-order-of-hearing requirement.

Rule 120a of the Texas Rules of Civil Procedure provides the procedure by which a nonresident defendant may challenge personal jurisdiction in a Texas court. Tex. R. Civ. P. 120a; *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Goldstein v. Sabatino*, 690 S.W.3d 287, 294-95 (Tex. 2024). However, a challenge to the trial court's personal jurisdiction may be waived by either making a general appearance or by failing to timely challenge the trial court's jurisdiction. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006) (Brister, J., concurring) (citing Tex. R. Civ. P. 120a; *Hilburn v. Jennings*, 698 S.W.2d 99, 100 (Tex. 1985)). Rule 120a provides, "Every appearance, prior to judgment, not in compliance with this rule is a general appearance." Tex. R. Civ. P. 120a(1). The Texas Supreme Court has "held that a party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). Rule 120a also provides that a challenge to the jurisdiction under the rule "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." Tex. R. Civ.

P. 120a(2). This is known as the due-order-of-hearing requirement. *See Wales v. Ruppert*, No. 09-17-00080-CV, 2018 Tex. App. LEXIS 1100, at \*\*7-10 (Tex. App.—Beaumont Feb. 8, 2018, pet. denied) (mem. op.) (no violation of the due-order-of-hearing requirement when record showed that the defendant's live testimony was during the hearing on the defendants' special appearance and not during the hearing on motion to transfer venue and the motion to transfer venue was substantively addressed after the trial court addressed the special appearance) (citing Tex. R. Civ. P. 120a(2)); *First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 776-77 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing Tex. R. Civ. P. 120a(2)); *Trejo*, 142 S.W.3d at 304. Under the due-order-of-hearing requirement, generally a party that asserts a special appearance, but seeks affirmative action from the trial court that is inconsistent with its assertion that the trial court lacks jurisdiction before the special appearance is both heard and determined, waives its special appearance. *Global Paragon Dallas, LLC*, 448 S.W.3d at 612-13; *Trenz*, 388 S.W.3d at 802-03.

That said, Rule 91a.8 expressly provides the following:

Rule 91a.8. Effect on Venue and Personal Jurisdiction[]

This rule is not an exception to the pleading requirements of Rules 86 and 120a, but a party does not, by filing a motion to dismiss pursuant to this rule or obtaining a ruling on it, waive a special appearance or a motion to transfer venue. By filing a motion to dismiss, a party submits to the Court's jurisdiction only in proceedings on the motion and is

> bound by the court's ruling, including an award of attorney fees and costs against the party.

Tex. R. Civ. P. 91a.8. The notes to Rule 91a.8 state the rule was added by the Texas Supreme Court, Misc. Docket No. 13-9022, effective March 1, 2013 and Amended by Texas Supreme Court, Misc. Docket No. 19-9053, effective September 1, 2019. By its plain language, Rule 91a.8 expressly states that by filing a Rule 91a motion to dismiss or *obtaining a ruling on it*, a party does not waive a special appearance. *See id.* Vinson filed his Rule 91a motion to dismiss after he had filed his special appearance. The record before us shows he obtained a ruling by submission on his Rule 91a motion to dismiss before he had a hearing on and obtained a ruling on his special appearance.

In arguing that Vinson violated the due-order-of-hearing requirement under Rule 120a of the Texas Rules of Civil Procedure, Appellees rely on *Klingenschmitt v. Weinstein*, 342 S.W.3d 131, 132-35 (Tex. App.—Dallas 2011, no pet.). *Klingenschmitt*, however, was decided prior to the Texas Supreme Court's adoption of Rule 91a.8. We are aware of no case law, nor do the parties cite any, discussing whether the due-order-of-hearing requirement has been affected by Rule 91a.8. We conclude that the plain language in Rule 91a.8 eliminates the due-order-of-hearing requirement within Rule 120a as to a Rule 91a motion, and we decline to follow *Klingenschmitt*.

As noted above, in the trial court's Order Denying Vinson's Special Appearance, the trial court did not provide a basis for denying Vinson's special appearance. That said, seven days prior to the signing of that Order, the trial court signed an Order Denying Plaintiffs' Motion for Continuance of the April 19, 2024 Special Appearance Hearing stating that the motion was "moot as the Special Appearance has not been heard prior to motion to transfer or 91a motion, and thus is violative of due order of hearings."

Rule 91a.8 states that by "filing a [Rule 91a] motion to dismiss . . . or *obtaining a ruling on it*, [a party does not] waive a special appearance." Tex. R. Civ. P. 91a.8 (emphasis added). Accordingly, the trial court erred when it stated that Vinson violated the due-order-of-hearing requirement. We sustain issue one. That said, we still must reach Vinson's second issue because we must still determine whether the trial court lacked personal jurisdiction over Vinson.

## Personal Jurisdiction

In his second issue, Vinson asserts that the trial court lacked personal jurisdiction over him in Texas. Specifically, Vinson argues that Appellees' Letter of Wishes claims and Appellees' InterOil Share Theft claims do not confer specific jurisdiction over Vinson because they do not substantially relate to any purposeful

15

Texas conduct by Vinson.[4] Appellees argue that sufficient facts support the trial court's exercise of personal jurisdiction over Vinson, and jurisdiction over Vinson comports with traditional notions of fair play and substantial justice. The Appellees do not argue the trial court had general jurisdiction, so we limit our discussion to a review applying principles of specific personal jurisdiction.

Plaintiffs' Jurisdictional Allegations

We first must determine whether Plaintiffs have met their initial burden of pleading sufficient allegations to bring Vinson, a nonresident defendant, within the jurisdiction of a Texas court. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149; *Kelly*, 301 S.W.3d at 658; *Retamco Operating, Inc.*, 278 S.W.3d at 337; *Booth*, 485 S.W.3d at 476. In the "Factual Background" section of Plaintiffs' First Amended Petition,[5] Plaintiffs include the following jurisdictional allegations related to specific jurisdiction:[6]

---

[4] On appeal, Vinson does not argue that asserting jurisdiction over him would violate traditional notions of fair play and substantial justice. Accordingly, we do not include a discussion of that requirement.

[5] As noted above, Plaintiff's First Amended Petition was the live pleading on file with the trial court at the time the trial court denied Vinson's special appearance.

[6] Plaintiffs also pleaded the following additional jurisdictional allegations that are not pertinent to our specific jurisdiction analysis.

> [] Defendant is a United States citizen and former long-term Texas resident who now lives in Singapore. Defendant grew up in Montgomery County, Texas, and he attended college at Sam Houston State University in Huntsville, Texas. Defendant's mother, Michelle Mulacek, resides in The Woodlands and Defendant comes to The Woodlands for as long as six weeks at a time. Marc Vinson is now

[] Plaintiff Carlo Giuseppe Civelli ("Civelli") is a citizen of Switzerland.

[] Plaintiff Aster Capital S.A. (LTD) Panama (Aster Panama) is a company registered in Panama, whose sole beneficial owner and director was, at all material times, and is now Civelli.

[] The Defendant Marc Vinson is a U.S. citizen with a residence in Singapore and he has sufficient contacts with the State of Texas for this Court to exercise personal jurisdiction over him pursuant to the Long Arm Statute, Texas Civil Practice and Remedies Code § 17.042.

. . . .

[] Defendant's Ties to Texas.

. . . .

[] . . . . Marc Vinson committed a tort in whole or in part in Texas, when Marc Vinson engaged in a fraudulent scheme with Mulacek to steal InterOil shares held in the PIE Group LLC #3 c/o Aster Capital S.A. account at JPMorgan Chase for Plaintiff, Aster Panama. These shares were transferred to an account at the Bank of Singapore ("BOS") under the name of Aster Capital, Inc. (a Brunei company, hereafter "Aster Brunei"). Aster Brunei was created in October of 2013, two

---

employed by Asian Oil & Gas, one of Phillippe Mulacek's [] many companies. He offices with Mulacek and maintains corporate records for the Mulacek companies.

[] Defendant has been employed by or [is] a member in numerous entities with offices in The Woodlands, Texas. Marc Vinson worked for InterOil at its Houston office. InterOil was founded by Marc Vinson's uncle, Mulacek, who was its CEO and Director from inception in 1996 to 2013. Mark Vinson worked for InterOil from 2011 to 2013, when Mulacek left InterOil and started Asian Oil and Gas.

[] When in Texas, Defendant works out of the offices of Mineral Resources Partners and Energy Evolution Fund at 25025 I-45, Suite 420, The Woodlands, Texas, in Montgomery County ("the Texas Office"). Marc Vinson is a Man[a]ger of Mineral Resources Partners & Acquisitions, Mineral Resources Partners (a Texas Limited Liability Company), Mineral Resources Holdings, LLC, Mineral Resources WI Wells, LLC, and Energy Evolution Master Fund (a Cayman Islands Hedge fund), located at the Texas Office. Marc Vinson is Treasurer of Mineral Resources Acquisition Corporation, located at the Texas Office.

17

months before the share transfer and dissolved in 2017 after it served its purpose to receive the shares, trade the shares, and liquidate them. It has no relationship to Plaintiff, Aster Panama and used the name "Aster" to perpetrate the theft of the shares. Marc Vinson was personally involved with Aster Brunei and its account at BOS.

[] Marc Vinson also committed a tort in whole or in part in Texas by collaborating with Mulacek to provide a fraudulent document in ongoing litigation between Plaintiffs and Mulacek in the U.S. District Court in Houston, Texas ("the S.D. Texas case"). The document was produced in the S.D. Texas case in Houston, Texas. Marc Vinson testified under oath that he found the document, labeled "Letter of Wishes", addressing all of Mulacek's allegations in the S.D. Texas case, on December 11, 2020 at 10:12 pm. in Mulacek's office in Singapore. This was untrue. Closed circuit TV footage for the location where Marc Vinson says he found the letter shows Marc Vinson had left the building at least two hours before. Additionally, the document produced was a pdf created at 7:26 pm on December 11, 2020. After the Court in the S.D. Texas case ordered Marc Vinson to turn over his computer for forensic examination, Marc Vinson deleted 83 documents while in Texas in the two days prior to turning the computer over to the forensic examiner on December 2, 2021. Similarly, Mulacek deleted 235 documents in the few days before turning over his computer in Texas on January 15, 2022. The investigation of these deletions is ongoing.

[] Marc Vinson and Mulacek also failed to produce hundreds of thousands of pages of documents in the S.D. Texas case, a number of which revealed Marc Vinson's engagement in the fraud. These documents were only discovered and provided to Plaintiffs this year as a result of the Court-ordered imaging and examination of Marc Vinson and Mulacek's computers.

. . . .

[] Vinson's liability arises directly out of his role in the theft of InterOil Corporation shares sent by plaintiffs to a Texas attorney, Dale Dossey, to be held in trust. The shares were exchanged for other shares, also to be held in trust, and those shares were placed in a JPMorgan account, managed by that Texas attorney, Dale Dossey, and Texas citizen and resident, Philippe Mulacek. These shares were transferred from an account of a Texas company at JPMorgan to an account at the Bank of Singapore for Aster Capital Inc., a Brunei company, which was created only two months before and for the purpose of receiving the

18

shares. Marc assisted in the creation of this company, Aster Capital Inc. (Aster Brunei) which had the same name as Plaintiff[] [Civelli's] company, Aster Capital S.A. (Aster Panama). The shares of Aster Brunei were held by a nominee, Tanaldi Ltd, whose sole director was Mark Vinson. The director of Aster Brunei was Greenland Limited, whose sole shareholder was Heritage Trust. Marc Vinson denies he was the director of Heritage Trust, but he signed documents as director. The purpose of using a copycat company, Aster Brunei – Phil Mulacek and Marc Vinson. Marc Vinson was a signatory on the Bank of Singapore account of Aster Brunei, and transferred funds from that account to himself and others. This theft of shares has its genesis in Texas, and Marc Vinson was intricately involved.

. . . .

[] In addition to his role in Aster Brunei, Defendant also provided a false document in the S.D. Texas case. This document is called the Letter of Wishes. On December 11, 2020, Mulacek produced the Letter of Wishes, at 7:06 p.m., over three years after this lawsuit was filed, five months after the deadline for document production, and on the last day for fact witness depositions. The letter purports to be signed by Carlo Civelli on May 22, 2012, and to address *every* contention of the Mulacek parties in this case.

[] In his deposition in the S.D. Texas case, Marc Vinson lied about being in Texas at the same time as Philippe Mulacek in November of 2020, just before the Letter of Wishes was produced. Then Marc Vinson lied more. He testified he found the Letter of Wishes on December 11, 2020 at about 10:12 p.m. after searching Phil Mulacek's Singapore office for about three hours, but the testimony is false. The scanned Letter of Wishes has [a] file path[] [indicating that it] was scanned December 11, 2020 [] at 7:27:46 pm[]. Moreover the CCTV footage for the office building shows that Marc Vinson left the office at 7:55 p.m. that evening.

After examining each cause of action pleaded by Plaintiffs, other than the allegations in the "Factual Background" section of the Petition, and the provisions cited above, the only other part of the Petition mentioning any conduct by Vinson related to Texas includes the following:

[] Count 3: Fraud

. . . .

[] Defendant provided a false document in ongoing litigation in Texas, the Letter of Wishes, that addresses *every* contention of the Mulacek parties in the S.D. Texas case.

[] Specifically, Defendant lied about when he purported to find the Letter of Wishes. Instead, the story about how it was found and the Letter of Wishes were fraudulently created by Marc Vinson and Mulacek for purposes of the S.D. Texas case.

[] Defendant had actual awareness of the falsity of the Letter of Wishes at the time that he provided it for use in the Texas case.

[] As a direct result of Defendant providing the Letter of Wishes to his uncle, Mulacek, the Court in the S.D. Texas case ordered the parties to engage in discovery for the specific purpose of determining whether the Letter of Wishes was authentic.

. . . .

[] Count 3: Conspiracy to Commit Fraud

. . . .

[] Defendant Marc Vinson conspired with Mulacek to commit fraud by assisting Mulacek with producing a fraudulent document—the Letter of Wishes—in the S.D. Texas case and by failing to disclose the conversion of the Loan Shares contrary to the promise or representation that the shares would be returned.

[] Defendant had actual awareness of the falsity of the Letter of Wishes at the time that he provided it for use in the [S.D.] Texas case and of the conversion of the shares.

The InterOil Share Theft Claims

As for Plaintiffs' conversion claim relating to Vinson's alleged transfer of InterOil shares, Plaintiffs allege in the Petition that in 2013, Vinson "converted Plaintiffs' Loan Shares each time he transferred portions of Plaintiffs' shares out of Aster Brunei and through his management of Aster Brunei assets" and that Vinson "wrongfully exercised dominion and control over the Loan Shares" and acted fraudulently. As for Plaintiffs' statutory fraud claim related to Vinson's alleged

20

transfer of InterOil shares, Plaintiffs allege in their Petition that Vinson "benefited from Mulacek and his own fraud against Plaintiffs by receiving transfers of Plaintiffs' assets from Aster Brunei and by receiving additional financial gain from the use of Plaintiffs' assets[,]" that Vinson "had actual awareness of the falsity of Mulacek's representation or promise to Civelli that Civelli's Loan Shares would be returned[,]" and that Vinson "benefitted from the false representation or promise by receiving proceeds personally from the Aster Brunei BOS account." As for Plaintiffs' fraudulent transfer claims related to Vinson's alleged transfer of InterOil shares, Plaintiffs allege that each time Vinson transferred the Loan Shares or assets out of Aster Brunei, he made a fraudulent transfer under the Texas Uniform Fraudulent Transfer Act.

When assessing specific jurisdiction, we focus on the relationship between Vinson, Texas, and the operative facts of the litigation. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413. We look only to Vinson's contacts with the forum to determine if Vinson purposefully availed himself of the privilege of doing business in Texas. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151 ("[O]nly the defendant's contacts with the forum are relevant . . . ."). We do not determine whether the alleged transfer of the shares was in fact fraudulent, as that relates to the merits of the lawsuit. *See Old Republic*, 549 S.W.3d at 563. None of the specific allegations by Plaintiffs as to the InterOil Share claim alleges that the transfer was

21

accomplished by any conduct by Vinson in Texas. However, in the "Factual Background" section of the Petition, incorporated into Plaintiffs' claim-by-claim allegations, Plaintiffs do allege that InterOil is a company founded by Mulacek and located in Houston, Texas; that Vinson was previously employed by InterOil; and that:

> Marc Vinson committed a tort in whole or in part in Texas, when Marc Vinson engaged in a fraudulent scheme with Mulacek to steal InterOil shares held in the PIE Group LLC #3 c/o Aster Capital S.A. account at JPMorgan Chase for Plaintiff, Aster Panama. These shares were transferred to an account at the Bank of Singapore ("BOS") under the name of Aster Capital, Inc. (a Brunei company, hereafter "Aster Brunei"). Aster Brunei was created in October of 2013, two months before the share transfer and dissolved in 2017 after it served its purpose to receive the shares, trade the shares, and liquidate them. It has no relationship to Plaintiff, Aster Panama and used the name "Aster" to perpetrate the theft of the shares. Marc Vinson was personally involved with Aster Brunei and its account at BOS.

Plaintiffs allege that Vinson was involved in a fraudulent scheme with Mulacek to steal InterOil shares; that the theft of shares had its genesis in Texas; that Vinson was "intricately involved[;]" that Vinson assisted in creating a company in Brunei – Aster Brunei—as a "copycat company" of Aster Panama with an account at the Bank of Singapore; and that after the InterOil shares had been transferred to the Aster Brunei account, Vinson transferred shares from the Aster Brunei account in Singapore to himself and others.

As to Plaintiffs' InterOil Share claims, Plaintiffs fail to assert any purposeful contacts by Vinson with Texas that are substantially connected to the operative facts

22

of the litigation. Instead, Plaintiffs generally allege that Vinson had prior connections to Texas and an ongoing connection with Mulacek while Vinson resided in Singapore, and that he was part of a fraudulent scheme with Mulacek that originated in Texas and that Vinson created the entity that had an account at the Bank of Singapore that received the InterOil shares. Even if we assume those allegations are true, we conclude Plaintiffs failed to plead facts which establish that Vinson had sufficient contacts and activity in and with Texas or that he purposefully availed himself of the privilege of conducting activities within Texas. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784.

In response to Vinson's special appearance and on appeal, Plaintiffs argue that Vinson's physical location in Singapore is not controlling. Plaintiffs emphasize the following in arguing that Vinson's acts constitute a substantial connection with Texas to support specific jurisdiction: the alleged fraudulent transfer of the InterOil shares originated in Texas; the shares were a Texas-based asset; and that Vinson worked with Mulacek, a Texas resident, to receive the shares of a company operating out of The Woodlands, Texas and the shares were held in a JPMorgan bank account managed by Texas residents Mulacek and Dale Dossey under the name of an entity controlled by Mulacek and operating out of The Woodlands, Texas; Vinson controlled the shares sent to Singapore and his receipt of the shares in Singapore from Texas was not merely a fortuitous connection with Texas; and Vinson derived

profit from the shares he received from Texas thereby creating a continuing connection with Texas.

Plaintiffs cite to *Old Republic National Title Ins. Co. v. Bell*, 549 S.W.3d 550 (Tex. 2018), *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009), and *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717 (Tex. App.—Houston [1st Dist.] 2005, pet. denied), in support of their argument that, as to their fraudulent transfer and statutory claims, Vinson's contacts with Texas were purposeful because he was knowingly involved in a scheme and fraudulently received Texas-based assets (the InterOil shares). As for their conversion claim, Plaintiffs argue on appeal that the claim arises from the same operative facts as the fraudulent transfer and statutory fraud claims and that Vinson purposefully availed himself of the privileges and laws of Texas because the shares he converted came from a Texas trustee, PIE Group.

In *Old Republic*, the Texas Supreme Court addressed whether personal jurisdiction existed against defendant Goldsmith who was allegedly a knowing participant in a fraudulent transfer scheme involving co-defendant Bell transferring to Goldsmith the proceeds from Bell's sale of a house and Goldsmith depositing the funds in her account in Louisiana. 549 S.W.3d at 563. *Old Republic* relied on *Retamco Operating, Inc.* and *Trigeant Holdings, Ltd.* in arguing that Texas courts have consistently found personal jurisdiction over a "knowing participant" in a

fraudulent-transfer scheme. *See id.* The Texas Supreme Court distinguished those

two cases and explained:

> We distinguish both of those cases because both involve the transfer of Texas-based assets to an out-of-state defendant, rather than the transfer of money, a fungible asset. *Retamco Operating, Inc.* involved the allegedly fraudulent transfer of oil and gas interests in Texas to a California corporation. 278 S.W.3d at 336. We held that "by taking an assignment of Texas real property, [the California corporation] reached out and created a continuing relationship in Texas." *Id.* at 339. Similarly, *Trigeant Holdings, Ltd.* involved the allegedly fraudulent transfer of an interest in a Corpus Christi refinery to two Florida entities. 183 S.W.3d at 722. The court of appeals in that case affirmed the trial court's exercise of personal jurisdiction, holding that "[b]y participating in a Texas transaction involving the transfer of Texas based assets to allegedly defraud a Texas resident, the [Florida entities] purposefully availed [themselves] of the benefits and privileges of conducting business in Texas." *Id.* at 728. Thus, the determining facts in both cases were not simply the allegedly fraudulent transfers, but instead the transfers of Texas-based business operations and real property, which derive profit from Texas and create continuing connection with the state.
>
> This case might have mirrored those cases if Bell had transferred an interest in the house itself to Goldsmith; however, she transferred a fungible asset—money—with no continuing presence in Texas, and the mere act of accepting the transfer of money drawn on a Texas bank is "of negligible significance for purposes of determining whether [a foreign defendant] had sufficient contacts in Texas." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984). . . . Thus, even if Goldsmith's receipt of funds were part of an elaborate fraudulent-transfer scheme, her contacts do not establish purposeful availment of the state of Texas, and the appropriate judicial forum to address Old Republic's claims against Goldsmith is Louisiana.

*Id.* at 563-64.

Here, even if Vinson's receipt of the InterOil shares in Singapore was part of

a fraudulent transfer scheme, even if he benefitted from the fraudulent transfer, and

even if he wrongfully exercised dominion and control over those shares, the shares of stock are a fungible asset with no continuing presence in Texas and his contacts as pleaded by Plaintiffs do not demonstrate that Vinson has purposefully availed himself of the benefits and protections of Texas law. *See id.*; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 788 ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State."); *see also, e.g., In re Argyll Equities, LLC*, 227 S.W.3d 268, 270 n.2 (Tex. App.—San Antonio 2007, orig. proceeding) (recognizing stock shares electronically transferred as fungible assets). "The mere existence or allegation of a conspiracy directed at Texas is not sufficient to confer jurisdiction." *See Old Republic*, 549 S.W.3d at 560. Also, the fact that Vinson allegedly was involved in the scheme with a Texas resident (Mulacek) is insufficient to confer personal jurisdiction over Vinson. *See id.* at 565. Accordingly, as to Plaintiffs' InterOil Share Theft claims, we conclude that Plaintiffs have not met their initial burden of pleading sufficient purposeful contacts by Vinson with Texas to confer specific jurisdiction over Vinson.

The Letter of Wishes Claims

Plaintiffs' claims against Vinson for fraud, conspiracy to commit fraud, and statutory fraud are based on allegations that Vinson and Mulacek conspired with each other to fraudulently create the "Letter of Wishes," which was then produced

26

by Mulacek in a federal case in Texas, that Vinson gave a deposition from Singapore in the federal case, and that Vinson allegedly lied during his deposition in Singapore about when he was in Texas and about how or when he found the "Letter of Wishes" that Vinson sent to Mulacek. Plaintiffs assert that Texas was clearly the focus of the activities of Vinson; and, that Vinson "intentionally targeted Texas" by fabricating a fraudulent document for the sole purpose of providing it to a court physically located in Texas for active Texas litigation and to further his scheme to defraud Civelli and Aster Panama. According to Plaintiffs, Vinson perjured himself in his deposition for the ongoing federal litigation in the State of Texas, and Vinson necessarily directed such action at the Texas federal court where the litigation is taking place.

Even if it is true that Vinson was involved with Mulacek in producing a fraudulent document (the Letter of Wishes) which was then provided to a federal court in Texas and assuming Vinson lied while he was in Singapore giving his deposition which was taken in connection with the federal suit to which Vinson was not a party and that was pending in a Texas court, these allegations do not constitute sufficient "contacts" to attach specific jurisdiction over Vinson. *See Booth*, 485 S.W.3d at 487 (the relationship between defendants' alleged contacts with Texas and the operative facts of plaintiff's tort claims is too attenuated to establish specific jurisdiction over any of the defendants). And, as for Plaintiffs' argument that Vinson

directed a tort at the Texas federal court, the Texas Supreme Court has rejected an approach to specific jurisdiction that turns on where a defendant "directed a tort" rather than on the defendant's contacts. *See Old Republic*, 549 S.W.3d at 565.

We conclude the trial court erred in failing to grant the special appearance.[7] We sustain issue two.

Conclusion

We reverse the trial court's order denying Vinson's special appearance, and we render judgment dismissing Appellees' claims against Vinson for lack of personal jurisdiction.

REVERSED AND RENDERED.

LEANNE JOHNSON<br>Justice

Submitted on May 16, 2025
Opinion Delivered February 12, 2026

Before Golemon, C.J., Johnson and Wright, JJ.

---

[7] Having determined that Vinson does not have sufficient minimum contacts with Texas, we need not address whether those contacts "compl[y] with traditional notions of fair play and substantial justice." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149-50 (Tex. 2013) (citations omitted).